

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-1095-10

**ALFREDO LEYVA PECINA, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, WOMACK, JOHNSON, KEASLER, HERVEY and ALCALA, JJ., joined. ALCALA, J., filed a concurring opinion in which JOHNSON, J., joined. PRICE, J., filed a dissenting opinion.

A Tarrant County jury convicted appellant of the murder of his wife. The trial judge denied appellant's motion to suppress his statements to police during custodial questioning at a hospital after a magistrate had given him his Article 15.17 rights.[1] The trial judge rejected appellant's claim that he had invoked both his Fifth and Sixth Amendment rights to

---

[1]TEX. CODE CRIM. PROC. art. 15.17.

counsel when he asked the magistrate for an appointed attorney but also said that he wanted to talk to the police who were standing outside the hospital room. On remand from this Court, the court of appeals, over a dissent, held that appellant had invoked his Fifth Amendment right to interrogation counsel during the magistration process.[2]

We granted the State's petition for discretionary review to clarify the distinction after *Montejo* between the Fifth Amendment right to interrogation counsel and the Sixth Amendment right to trial counsel.[3] Under *Montejo*, the Fifth Amendment right to interrogation counsel is triggered by the *Miranda* warnings that police must give before beginning any custodial questioning. The Sixth Amendment right to trial counsel is triggered by judicial arraignment or Article 15.17 magistration. Both the Fifth and Sixth Amendment rights to counsel apply to post-magistration custodial interrogation, but each is invoked and waived in exactly the same manner–under the Fifth Amendment prophylactic *Miranda* rules. We hold that, because appellant never invoked his right to interrogation counsel after the police gave him *Miranda* warnings, the trial judge did not err in denying appellant's motion

---

[2] *Pecina v. State*, 326 S.W.3d 249, 265-66 (Tex. App.–Fort Worth 2010) ("When Pecina requested appointment of counsel, which is undisputed, he invoked his Fifth Amendment right to consult with and have counsel present, as the magistrate explained that right to him, at any police questioning. The police were waiting in the hall to question him at that moment.").

[3] The State's Grounds for Review are as follows:
(1)    The Fort Worth Court's opinion improperly conflates Appellant's noninterrogative arraignment with his subsequent interrogation.
(2)    The Fort Worth Court misapplied this Court's opinion in *Hughen v. State*.
(3)    Appellant could not anticipatorily invoke his Fifth Amendment rights at a noninterrogative arraignment.

to suppress.

I.

**A.    Factual Background.**

Arlington paramedics responded to a 911 call and found appellant and his wife, Michelle, in their apartment, both bleeding from stab wounds.  Michelle, who had been stabbed fifty-five times, died before the paramedics arrived.  Appellant was taken to the hospital.  A serrated kitchen knife with a seven-inch blade was found on the bathroom floor. Based on their initial investigation, detectives believed that appellant had killed Michelle and then stabbed himself.  After several days, they obtained an arrest warrant.  Then Detectives Nutt and Frias took Judge Maddock, a local magistrate, to appellant's hospital room.

Judge Maddock testified at the suppression hearing that she normally performs magistration hearings at the Arlington City Jail, but she went to the hospital for appellant's hearing, as she had done in some other cases, "due to the policy of the sheriff's office [that it will not] transfer . . . a Defendant until he has been fully magistrated." The two detectives drove Judge Maddock to the hospital and entered appellant's room with her.  They all introduced themselves.  Judge Maddock, who was fluent in Spanish, told appellant, while pointing to the detectives, "They are here. They would like to speak to you." Appellant either said yes or nodded.

The detectives then left the room and stood outside while Judge Maddock arraigned appellant. She read appellant a Spanish version of the Article 15.17 "Adult Warning Form,"

although she had only an English version for him to sign.[4] After reading appellant his rights, Judge Maddock asked if he "want[ed] a court appointed attorney. And he stated he did." She then asked appellant, "Do you still want to talk to [the detectives]?" He said that he did. Appellant signed the Article 15.17 form acknowledging that he understood his rights.

Judge Maddock stated that, in her opinion, appellant's decision to speak with the detectives was free and voluntary and there was "absolutely no coercion." She believed that, when appellant asked for counsel, he was asking for trial counsel. She said that appellant never indicated that he wanted a lawyer to be present when detectives questioned him. Judge Maddock then went into the hall and told the detectives that appellant "had initially asked for a lawyer, but [that] she had been told by Mr. Pecina that he wanted to talk to them." She gave the signed Article 15.17 form to the detectives, and she waited in the hallway.

---

[4] Judge Maddock read the Spanish version of the rights printed on the English version, including the following:

(2)   You have a right to hire a lawyer and have him/her present prior to and during any interview and questioning by peace officers or attorneys representing [the] state;

(3)   If you cannot afford a lawyer, you have the right to request the appointment of a lawyer to be present prior to and during any such interview and you have the right to have an attorney appointed to represent you if you cannot afford an attorney. This means you may obtain your own lawyer or have a lawyer appointed for you. You may have reasonable time and opportunity to consult your lawyer if you desire. [The form then describes the paperwork necessary to obtain indigent status for counsel];

(4)   You have the right to remain silent. You do not have to speak to the police;

(5)   You are not required to make a statement, and any statement you make can and [may be] used against you in court;

(6)   You have the right to stop any interviewing or questioning at any time. If you decide to answer questions, you may stop the questioning at any time;

(7)   You have the right to have an examining trial if you are charged with a felony offense; and

(8)   You may be subject to deportation if you are not a U.S. citizen.

Detectives Frias and Nutt then came back into appellant's room. Det. Frias spoke Spanish and explained to appellant who they were and that they wanted to question him about his wife's murder. Appellant said that he wanted to talk with them, so Det. Frias wrote, in Spanish, on the 15.17 form, "I asked for a lawyer, but also I wanted to speak with the Arlington police." The officers told appellant that they would record the interview, and as they prepared their equipment, Det. Frias gave appellant the *Miranda*[5] warnings orally in Spanish. The audio equipment malfunctioned at first, so Det. Frias orally warned Pecina again once the tape started. Appellant also signed a card that listed his *Miranda* rights in Spanish. At every point, appellant waived his *Miranda* rights. While taping the oral statement, Det. Frias wrote out a written version for appellant, and he signed it.[6]

The detectives said that appellant never asked to stop the interview and never asked to speak with counsel. They denied making any promises, and they stated that they believed appellant's waiver was knowing, intelligent, and voluntary. After their interview, the detectives took Judge Maddock back to her office, and she began the process to appoint appellant's trial counsel.

Appellant testified that, if an attorney had advised him not to speak with police, he

---

[5] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[6] In his taped statement, appellant said that he did not remember much about the day his wife died. He said that they had argued about her not wanting to be with him. He became angry, and they started to fight. Appellant admitted that he had cut his wife and that no one else was present when these events occurred. He had no memory of cutting himself. In his written statement, appellant said that he picked up the knife from the kitchen and cut his wife, but he did not remember how many times he cut her.

would not have talked with them. The rest of his testimony dealt with whether he was advised that he could contact the Mexican Consulate.

The trial judge denied the motion to suppress. He found that appellant was fully informed of his rights and "indicated that although he did want a lawyer, that he wished to also talk with detectives from Arlington, meaning that he basically was waiving his rights at that time."

## B.  Appellate History.

On original submission, the Fort Worth Court of Appeals affirmed appellant's murder conviction, finding that, when appellant agreed to speak with police in response to the magistrate's question, he initiated contact with police.[7] Appellant's action waived both the Fifth Amendment right to interrogation counsel and the Sixth Amendment right to trial counsel, regardless of which he may have invoked.[8] On discretionary review, we reversed, holding that, under *Michigan v. Jackson*,[9] appellant "had invoked his [Sixth Amendment] rights to counsel when arraigned by the magistrate at the hospital," and appellant's "yes" reply when the magistrate asked if he still wanted to talk with the police was insufficient to reinitiate contact and waive his previously invoked Sixth Amendment right.[10] We remanded

---

[7] *Pecina v. State*, No. 2-05-456-CR, 2007 WL 1299263, *7-8 (Tex. App.—Fort Worth May 3, 2007) (not designated for publication) (*Pecina I*).

[8] *Id.*

[9] 475 U.S. 625 (1986).

[10] *Pecina v. State*, 268 S.W.3d 564, 568 (Tex. Crim. App. 2008) ("While we agree with the court of appeals that Appellant's Sixth Amendment right to counsel attached when he was

the case for the court of appeals to conduct a harm analysis.

While this case was pending in the court of appeals on remand, the United States Supreme Court overruled *Michigan v. Jackson*–the very case that we relied on in holding that appellant's invocation of his Sixth Amendment right to counsel at the magistration hearing rendered his subsequent waiver of the right to counsel for the police-initiated interview invalid–in *Montejo v. Louisiana*.[11] However, the court of appeals held that, even after *Montejo*, appellant's statements should have been suppressed because he invoked his Fifth Amendment right to an interrogation attorney by asking the magistrate for an appointed lawyer.[12] We granted review to discuss the distinct Fifth and Sixth Amendment rights to counsel after *Montejo* and to apply those differences to custodial interrogation.

## II.

Over the past four decades, the jurisprudence concerning the Fifth Amendment right to counsel during police interrogation and the Sixth Amendment right to counsel at all "critical" stages of criminal proceedings had become intertwined in complex and confusing ways. It was increasingly difficult for courts to determine which right can be invoked when and whether invocation of the right to counsel under one amendment invoked the right to counsel under the other amendment. Finally, in *Montejo*, the United States Supreme Court

---

arraigned by the magistrate, we disagree that Appellant himself initiated contact with the police.") (*Pecina II*).

[11] *Montejo v. Louisiana*, 556 U.S. 778, 129 S.Ct. 2079 (2009).

[12] *Pecina v. State*, 326 S.W.3d 249, 264–67 (Tex. App.—Fort Worth 2010) (*Pecina III*).

disentangled the two right-to-counsel constitutional provisions and clarified their separate

purposes and applications by overruling *Michigan v. Jackson* and reaffirming the bright-line

rule of *Miranda* and *Edwards*.[13]  As Justice Scalia noted in his *Montejo* conclusion,

> This case is an exemplar of Justice Jackson's oft quoted warning that this
> Court "is forever adding new stories to the temples of constitutional law, and
> the temples have a way of collapsing when one story too many is added.  We
> today remove *Michigan v. Jackson*'s fourth story of prophylaxis.[14]

We examine how the lessons of *Montejo* apply in this case, one that is factually very similar

to *Montejo*.[15]

---

[13] *Montejo,* 556 U.S. at ___, 129 S.Ct. at 2091-92.

[14] *Montejo*, 556 U.S. at __, 129 S.Ct. at 2092 (citation omitted).

[15] Jesse Jay Montejo was arrested for murder and questioned by police detectives.  He admitted that he had shot and killed the victim in a botched burglary.  Several days later he was charged with murder and, at a preliminary hearing, the judge ordered that counsel be appointed to represent him.  129 S.Ct. at 2082.  Later that same day, police detectives visited Montejo in jail.  They read him his *Miranda* rights and asked him to accompany them to find the murder weapon.  Montejo agreed, and, during the trip, he wrote "an inculpatory letter of apology to the victim's widow."  *Id.*  Only later did Montejo meet his court-appointed lawyer, "who was quite upset that the detectives had interrogated his client in his absence."  *Id.*  On appeal, Montejo claimed that the inculpatory letter should not have been admitted because he had invoked his Sixth Amendment right to counsel at the preliminary hearing and thus police officers were barred from questioning thereafter without the presence of counsel.  *Id.* at 2083.  The Supreme Court held that neither a defendant's request for counsel at a preliminary hearing nor appointment of that counsel affects the validity of the defendant's waiver of his *Miranda* rights during a subsequent custodial interrogation by police.  *Id.* at 2091-92.  But the Court remanded the case to determine whether Montejo had "made a clear assertion of the right to counsel when the officers had approached him about accompanying them on the excursion for the murder weapon," because (1) the question of whether Montejo had validly waived his *Miranda* rights had not been fully litigated; and (2) he could still press his claim that his Sixth Amendment rights had been violated if the police misrepresented whether he had been appointed a lawyer when he purportedly waived his *Miranda* rights during that custodial interrogation.  *Id.*

## A.    The Fifth Amendment Right to Interrogation Counsel.[16]

The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against himself.[17]   In *Miranda v. Arizona,*[18] the Supreme Court crafted safeguards to protect this "privilege against self-incrimination" in the inherently coercive atmosphere of custodial interrogations.[19]   Before questioning a suspect who is in custody, police must give that person *Miranda* warnings.   Only if the person voluntarily and intelligently waives his *Miranda* rights, including the right to have an attorney present during questioning, may his statement be introduced into evidence against him at trial.[20]

Under *Edwards v. Arizona,*[21] once a person invokes his right to have counsel present

---

[16]We refer to this right to counsel as the "Fifth Amendment right to interrogation counsel" to distinguish it from the "Sixth Amendment right to trial counsel." To be clear, this is something of a misnomer to the extent that it indicates that the Fifth Amendment itself creates a right to counsel. The rights created by *Miranda*, including the right to have counsel present during custodial interrogation, "are not themselves rights protected by the Constitution but [are] instead measures to insure that the right against compulsory self-incrimination [is] protected." However, because of the pervasiveness of the term's use in the cases of the Supreme Court . . .  interpreting the right to counsel created by *Miranda*, we use it here.
*Goodwin v. Johnson*, 132  F.3d 162, 179 n.12 (5th Cir. 1997) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 203 (1974) (all other citations and quotation marks omitted).

[17] U.S. CONST. amend V ("No person . . . shall be compelled in any criminal case to be a witness against himself").

[18] 384 U.S. 436 (1966).

[19] *Id.* at 441; *see also Dickerson v. United States*, 530 U.S. 428, 437-38 (2000) (describing the Fifth Amendment right to interrogation counsel as a prophylactic rule necessary to mitigate the inherently coercive environment of custodial interrogation).

[20] *Miranda*, 384 U.S. at 475.

[21] 451 U.S. 477 (1981).

during custodial interrogation, a valid waiver of that right cannot be established by merely showing that the suspect responded to police-initiated interrogation after being advised of his rights again.[22] The purpose of the *Edwards* rule is to "prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights."[23] That prophylactic rule protects the suspect–who has made the decision not to speak to law-enforcement officers without his lawyer and clearly communicated that decision to the police–from further police badgering.[24] In *Montejo*, the Supreme Court again praised the "clear and unequivocal guidelines to the law enforcement profession" that *Edwards* provides.[25]

It is the police officer or other law-enforcement agent who administers *Miranda* warnings, and he does so immediately before custodial interrogation.[26] Thus, the police must give the Fifth Amendment *Miranda* warnings during the process of custodial interrogation

---

[22] *Id.* at 485.

[23] *Michigan v. Harvey*, 494 U.S. 344, 350 (1990).

[24] *Texas v. Cobb*, 532 U.S. 162, 175 (2001) (Kennedy, J., concurring).

[25] *Montejo*, 556 U.S. at __, 129 S.Ct. at 2091 (internal quotation marks omitted).

[26] *Miranda*, 384 U.S. at 444-45 (suspect may invoke his Fifth Amendment right to interrogation counsel "prior to" interrogation or during interrogation if he indicates "in any manner, and at any stage of the process that he wishes to consult with an attorney before speaking"). In *Montejo*, the Supreme Court repeatedly referred to the Fifth Amendment right to counsel during "police initiated" custodial interrogation, thus it is that factual scenario–questioning by police officers or their agents–that gives rise to the prophylactic *Miranda* warnings, and the invocation or waiver of the Fifth Amendment right to counsel during such questioning. *See Montejo*, 556 U.S. at ___, 129 S.Ct. at 2086 (stating that "antibadgering" by police officers is the rationale of *Edwards*), *id.* at 2087 (rejecting Montejo's proposed rule that would prevent "police-initiated interrogation entirely once the Sixth Amendment right" to counsel attaches), *id.* at 2089 (purpose of *Jackson* rule, like that of *Edwards*, "is to preclude the State from badgering defendants into waiving their previously asserted rights").

but before questioning actually begins.[27]   But, as the Supreme Court noted in *McNeil v. Wisconsin*,[28] it has never accepted the notion of an "anticipatory" invocation of *Miranda* rights (1) given by someone other than law-enforcement officers or other state agents; or (2) outside the context of custodial interrogation.

> We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation"–which a preliminary hearing will not always, or even usually, involve. . . . Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the

---

[27] *Id.* at 467. As the *Miranda* Court stated, "An individual need not make a pre-interrogation request for a lawyer. While such request affirmatively secures his right to have one, his failure to ask for a lawyer does not constitute a waiver. No effective waiver of the right to counsel during interrogation can be recognized unless specifically made after the warnings we here delineate have been given." 384 U.S. at 470.  Thus, a suspect who, before the police have begun reading him his *Miranda* warnings, asks them for an attorney, is entitled to one before being questioned.  Similarly, a suspect who, upon being given his *Miranda* warnings, asks the police for an attorney, is entitled to one before being questioned.  And a suspect who initially states that he understands all of his rights and wishes to waive them, but, at any point during the questioning, stops and asks for an attorney, is entitled to one before being questioned further.

[28] 501 U.S. 171 (1991); *see also Green v. State*, 934 S.W.2d 92, 97 (Tex. Crim. App. 1996) ("Like the hearing in *McNeil*, appellant's request for an attorney at his appearance associated with the robbery was not an expression for assistance in dealing with custodial interrogation by the police."); *Flamer v. Delaware*, 68 F.3d 710, 725-26 (3d Cir. 1995) (murder defendant's request for counsel at his arraignment did not constitute a Fifth Amendment request for counsel at a subsequent police interrogation; "*McNeil* stands for the proposition that a request for an attorney at arraignment is, in itself, insufficient to invoke the Fifth Amendment right to counsel at subsequent custodial interrogation—even if that interrogation concerns the offense on which the defendant was arraigned."); *Alston v. Redmond*, 34 F.3d 1237, 1246 (3d Cir. 1994) ("The antipathy expressed in *McNeil* towards the anticipatory invocation of the *Miranda* rights is consistent with *Miranda*'s underlying principles. The *Miranda* right to counsel is a prophylactic rule that does not operate independent from the danger it seeks to protect against—'the compelling atmosphere inherent in the process of in-custody interrogation'—and the effect that danger can have on a suspect's privilege to avoid compelled self-incrimination.").

context of custodial interrogation, with similar future effect.[29]

Thus, in *Montejo*, the Supreme Court stated that, under its Fifth Amendment jurisprudence, "a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings."[30] And if he does invoke his Fifth Amendment right to counsel, "not only must the immediate contact [by police] end, but 'badgering' by later requests is prohibited."[31]

Once formal adversary proceedings begin, the Sixth Amendment right to counsel applies in exactly the same way as the Fifth Amendment right applies to custodial interrogation.[32] Thus, *Miranda* warnings serve the arrestee's interests in both the Fifth and Sixth Amendment rights to counsel during custodial interrogations conducted after a person has been formally charged. Because the "doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver,"[33] both the Fifth and Sixth Amendment rights to interrogation counsel are fully

---

[29] 501 U.S. at 182 n.3.

[30] *Montejo*, 556 U.S. at __, 129 S.Ct. at 2090 (citing "the *Miranda- Edwards-Minnick* line of cases").

[31] *Id.*

[32] *Id.* (noting that cases like *Jackson* "protect the right to have counsel during custodial interrogation–which right happens to be guaranteed (once the adversary judicial process has begun) by *two* sources of law. Since the right under both sources is waived using the same procedure, doctrines ensuring voluntariness of the Fifth Amendment waiver simultaneously ensure the voluntariness of the Sixth Amendment waiver") (citations omitted).

[33] *Id.* at 2090.

encompassed by the Fifth Amendment *Miranda* doctrine.

**B.      The Sixth Amendment Right to Trial Counsel**.

The Sixth Amendment right to counsel attaches once the "adversary judicial process has been initiated," and it guarantees "a defendant the right to have counsel present at all 'critical' stages of the criminal proceedings."[34]  We refer to this Sixth Amendment right with the short-hand term "trial counsel."  Generally, an Article 15.17 initial appearance and magistration marks the initiation of adversarial judicial proceedings in Texas and "plainly signals" the attachment of a defendant's Sixth Amendment right to counsel.[35]

In *Michigan v. Jackson*, the Supreme Court had held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid."[36]  That is the rule that the Supreme Court explicitly overruled in

---

[34] *Montejo*, 556 U.S. at __, 129 S.Ct. at 2085.  An accused may invoke his Sixth Amendment right "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972).  This is the "starting point" for the Sixth Amendment right to trial counsel because "it is only [when adversary proceedings commence] that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified." *Id*.

[35] *Rothgery v. Gillespie County*, 554 U.S. 191, 212 (2008) (stating that Texas's article 15.17 magistration hearing "plainly signals" the attachment of the Sixth Amendment right to counsel, "even if it is not itself a critical stage."); *see also Hughen v. State*, 297 S.W.3d 330, 335 (Tex. Crim. App. 2009) (defendant's "Article 15.17 initial appearance marked the initiation of adversarial judicial proceedings against him and thus 'plainly signal[ed] attachment' of his Sixth Amendment right to counsel.").

[36] *Michigan v. Jackson*, 475 U.S. 625, 636 (1986).

*Montejo* because it was deemed "unworkable," "superfluous," and a "policy driven" doctrine whose "policy is being adequately served through other means."[37]

Furthermore, the *Jackson* rule simply did not take account of the practical realities and goals of the arraignment event and its relationship to the separate event of custodial interrogation. When a person is brought before a magistrate, told that he is formally accused of committing a crime, and asked if he wants a lawyer to represent him in those criminal proceedings, that is an entirely different question from whether he wants a lawyer to be with him during any police questioning. A defendant's response, "Yes, I want a lawyer," is fatally ambiguous because it may mean "I want a lawyer for these judicial proceedings," or "I want a lawyer before I talk to the police," or "I want a lawyer for all purposes and I do not want to say anything more to anyone–you or the police–until I have one."[38]

As *Montejo* concluded, this ambiguity is easy to resolve: a Sixth Amendment request for an attorney at an arraignment, initial appearance, or Article 15.17 hearing is a request for the guiding hand of counsel for all judicial criminal proceedings. If the defendant also wishes to invoke his Sixth Amendment right to counsel during the "critical stage" of post-

---

[37] *Montejo*, 556 U.S. at __, 129 S.Ct. at 2089-91 (concluding that, "when the marginal benefits of the *Jackson* rule are weighed against its substantial costs to the truth-seeking process and the criminal justice system, we readily conclude that the rule does not 'pay its way.'").

[38] *See Montejo*, 556 U.S. at __, 129 S.Ct. at 2086 (noting that even the *Jackson* Court acknowledged "doubt that defendants 'actually intend[ed] their request for counsel to encompass representation during any further questioning'").

arraignment custodial interrogation,[39] he may certainly do so. But he does so by invoking that right to counsel, pursuant to *Miranda*, *Edwards,* and *Minnick* when law enforcement or other state agents embark upon custodial interrogation.[40]

Thus, both the Fifth and Sixth Amendment rights to counsel during custodial interrogation depend upon the same thing: "What matters for *Miranda* and *Edwards* is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation–not what happened at any preliminary hearing."[41]

Distilled to its essence, *Montejo* means that a defendant's invocation of his right to counsel at his Article 15.17 hearing says nothing about his possible invocation of his right to counsel during later police-initiated custodial interrogation. The magistration hearing is not an interrogation event. An uncharged suspect may invoke his Fifth Amendment right to counsel (and a defendant who has been arraigned may invoke his Sixth Amendment right to counsel) for purposes of custodial interrogation when the police or other law-enforcement

---

[39] *See Montejo*, 556 U.S. at ___, 129 S.Ct. at 2085 (citing *Massiah v. United States*, 377 U.S. 201, 204-05 (1967)).

[40] *Montejo*, 556 U.S. at ___, 129 S.Ct. at 2089-90 (stating that, even without *Jackson*, "any suspect subject to custodial interrogation has the right to have a lawyer present if he so requests, and to be advised of that right. . . . These three layers of prophylaxis are sufficient. Under the *Miranda-Edwards-Minnick* line of cases (which is not in doubt), a defendant who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings. . . . If that regime suffices to protect the integrity of a 'suspect's voluntary choice not to speak outside his lawyer's presence' before his arraignment, it is hard to see why it would not also suffice to protect that same choice after arraignment, when Sixth Amendment rights have attached.") (citation omitted).

[41] *Id.* at 2091.

agents approach him and give him his *Miranda* warnings. That is the time and place to either invoke or waive the right to counsel for purposes of police questioning.

## C. Standard of Review

In reviewing claims concerning *Miranda* violations and the admission of statements made as the result of custodial interrogation, we conduct the bifurcated review articulated in *Guzman v. State*.[42] We afford almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor while we review de novo the trial court's rulings on application of law to fact questions that do not turn upon credibility and demeanor.[43]

However, the Supreme Court has held that, in deciding whether an accused "actually invoked his right to counsel," reviewing courts must use an objective standard "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations[.]"[44] The accused "must unambiguously request counsel" during a custodial interrogation; thus, "he must articulate his desire to have counsel present sufficiently clearly that a reasonable police

---

[42] 955 S.W.2d 85, 89 (Tex. Crim. App. 1997); *see Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011) ("[W]e measure the propriety of the trial court's ruling with respect to alleged *Miranda* violations under the totality of the circumstances, almost wholly deferring to the trial court on questions of historical fact and credibility, but reviewing *de novo* all questions of law and mixed questions of law and fact that do not turn on credibility determinations."); *Ripkowski v. State,* 61 S.W.3d 378, 381-82 (Tex. Crim. App. 2001).

[43] *Leza*, 351 S.W.3d at 349.

[44] *Davis v. United States*, 512 U.S. 452, 458-59 (1994).

officer in the circumstances would understand the statement to be a request for an attorney."[45]

We view the totality of circumstances from the viewpoint of the objectively reasonable police officer conducting custodial interrogation.

With that general background, we turn to the present case.

III.

In this case, there were two separate events: magistration followed by a custodial interrogation.[46] Judge Maddock conducted the magistration and gave appellant his Article 15.17 warnings in Spanish. Appellant told her, "I want a lawyer, but I also want to speak with the Arlington Police." In her opinion, appellant asked for the appointment of a trial attorney, but he wanted to talk to the police who were standing right outside the hospital door. She did not believe that appellant invoked his right to counsel for purposes of custodial interrogation.[47] As a neutral magistrate, acting in her judicial capacity, she concluded that

---

[45] *Id.* at 459.

[46] The court of appeals mistakenly concluded that, during the magistration, appellant was "approached for interrogation." *Pecina III*, 326 S.W.3d at 267 ("The detectives–acting through the magistrate–initiated interrogation by asking Pecina if he still wanted to talk to them."). These are entirely distinct events, and the officers were not even in the hospital room when Judge Maddock performed her magistration duties, nor could it be said that, as a judge, she was somehow a conduit for custodial interrogation by the detectives.

[47] Indeed, such a request would be entirely inconsistent with the words that appellant actually used. *See, e.g., McNeil v. Wisconsin*, 501 U.S. 171, 178-79 (1991) ("[T]o find that [the accused] invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request.") (internal quotations marks omitted).

appellant was willing to talk to the police officers without counsel.[48] The detectives then entered and gave appellant his *Miranda* warnings in Spanish three separate times. At no time did he hesitate, invoke his right to an attorney at that interview, or ask the officers to stop their questioning. The officers concluded that appellant freely, voluntarily, and intelligently waived his right to counsel during their questioning. There is nothing in the record that would contradict their conclusion.

Under the totality of these circumstances, we agree with the trial judge that an objective and reasonable police officer, conducting a custodial interrogation, would conclude that appellant had voluntarily waived both his Fifth and Sixth Amendment rights to counsel for purposes of the custodial questioning by Detectives Frias and Nutt. Because appellant was in custody at the time the police questioned him, he had a Fifth Amendment right to counsel if he wished to invoke it. Because formal adversary proceedings had begun against appellant and were triggered by Judge Maddock's magistration, he had a Sixth Amendment

---

[48] The article 15.17 hearing assures suspects that judges, not police, are in charge of the justice system in America. As Professors Dix and Schmolensky have noted,

> A primary function of the appearance before the magistrate, of course, is the provision of the interrogation warnings, but by a person with less interest in having waivers than interrogating officers. In addition, presentation demonstrates to suspects that the law enforcement agency holding them acknowledges outside limits upon its power over suspects. Both impartial warnings and the demonstration of judicial dominance may reduce the inherently coercive impact of later custodial interrogation upon suspects.

41 G. DIX & J. SCHMOLENSKY, TEXAS PRACTICE SERIES: CRIMINAL PRACTICE AND PROCEDURE §20:5 (3d ed. 2011).

right to counsel if he wished to invoke it. He could invoke either or both in precisely the same manner–by telling the officers, after they gave him the *Miranda* warnings, that he wished to have an attorney before speaking to them. He did not do so. He, therefore, waived both his Fifth and Sixth Amendment rights to counsel during custodial interrogation.[49]

A majority of the court of appeals, in its opinion, acknowledged the Supreme Court's decision in *Montejo*, and stated that "*Miranda* and *Edwards* are still the law for suspects in custody subjected to police interrogation. . . . To protect the Fifth Amendment privilege against self-incrimination, the police may not initiate custodial interrogation of a suspect who has previously requested assistance of counsel." Not exactly. Under *Montejo*, and following *Miranda, Edwards*, and *Minnick*, the correct statement is, "To protect the Fifth Amendment privilege against self-incrimination, the police may not continue or re-initiate custodial interrogation of a suspect who has previously requested assistance of counsel *after the police informed him of his right to counsel at the beginning of a custodial interrogation*."[50] Judge Maddock's magistrate did not trigger any Fifth Amendment right concerning custodial interrogation; that was done by the detectives at the beginning of their interrogation.

---

[49] Appellant aptly notes, "Once counsel is invoked, whether it is called 5th Amendment invocation or a 6th Amendment invocation is a distinction without a lot of difference." Appellant's Brief at 6. He is correct in the context of post-arraignment custodial interrogation, as a defendant has both a Fifth and Sixth Amendment right to counsel during that interrogation and either (or both) is triggered by the police giving him the *Miranda* warnings.

[50] *See Montejo*, 556 U.S. at __, 129 S.Ct. at 2090 ("[A] defendant [i.e. one who has been formally charged with a crime] who does not want to speak to the police without counsel present need only say as much when he is first approached and given the *Miranda* warnings.").

Justice Holman, in his dissenting opinion in the court below, correctly noted that "the *'Miranda-Edwards* regime' does not apply to 'non interrogative types of interaction between the defendant and the State.'"[51] He stated that both the Supreme Court decision in *Montejo* and our post-*Montejo* decision in *Hughen*[52] make it clear that "whatever occurred at [appellant's] preliminary hearing did not even implicate *Edwards* because Pecina had not yet been approached for interrogation nor had he ever unambiguously expressed his desire to deal with the police only through his attorney."[53] Further, Justice Holman correctly noted, "now that the *Montejo* court has overruled *Jackson*, neither a defendant's request for counsel at arraignment or similar proceeding nor appointment of counsel by a court gives rise to a presumption that any subsequent waiver by a defendant to police-initiated interrogation is invalid."[54] We agree with this analysis.

Because, under *Montejo*, appellant never invoked his Fifth or Sixth Amendment rights to counsel during custodial interrogation, we conclude that the trial judge properly denied

---

[51] *Pecina III*, 326 S.W.3d at 271 (Holman, J., dissenting).

[52] In *Hughen*, the defendant was taken to a magistrate who read him his rights under article 15.17. 297 S.W.3d at 331-32. The defendant requested appointment of counsel. *Id.* Three hours later, a detective initiated custodial interrogation by reading the defendant his *Miranda* rights, and the defendant waived those rights and agreed to talk to the officer without counsel. *Id.* at 332. We held that the Fifth Amendment *Miranda* waiver was sufficient to waive his Sixth Amendment right to counsel during that interview. *Id.* at 335. *Hughen* specifically dealt only with a waiver under the Sixth Amendment because that was his specific claim. Under *Montejo*, the result is exactly the same under either a Fifth or Sixth Amendment claim.

[53] *Pecina III*, 326 S.W.3d at 271 (Holman, J., dissenting).

[54] *Id.* at 272.

appellant's motion to suppress his statements made as a result of that police questioning. We

therefore reverse the judgment of the court of appeals and affirm the trial court's judgment.

Delivered: January 25, 2012
Publish