

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00281-CR

DESMOND LEDET                                                    APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## CONCURRING OPINION

----------

Respectfully, I cannot agree with the majority's analysis that appears to justify mistakes of the police and the prosecutor, inadvertent though they may be, and I therefore concur only in the result. If we do not say that the conduct is wrong, then we approve it by our silence, and that conduct will be repeated. Our duty is not to find a way to justify the actions of either the State or the defense, but to rule on issues brought before us with total impartiality and to provide guidance to the bar and to the bench as objectively as possible in accordance with the law.

Appellant appears to confuse charge error with sufficiency in his seventh point. Even if the trial court improperly charged the jury on the lesser included offense of sexual assault when trial evidence showed only the greater offense, the evidence is nevertheless sufficient to support a conviction for the lesser offense if it is subsumed in the greater offense that was proved.[1] To the extent the majority so holds, I agree with the majority.

But I cannot agree with the majority's conclusion that Appellant did not invoke his right to have counsel present for police questioning. The majority relies on *Pecina v. State* for the rule that a defendant's invoking his right to counsel does not really invoke his right to counsel if he does it formally before the magistrate and in writing.[2] Rather, under *Pecina*, the defendant must invoke his right to counsel informally before police officers with no witnesses and orally in order for the invocation to be "real."[3] I suggest that until someone explains that distinction to the defendant who is not schooled in the niceties of the law, the foolish defendant may likely believe that a written invocation of his right to counsel actually invokes his right to counsel as explained in the *Miranda* warnings. In the case now before this court, the police either knew or should have known that Appellant had invoked his right to counsel but went on to question him anyway.

---

[1] Tex. Code Crim. Proc. Ann. art. 37.09 (West 2006).

[2] *See* 361 S.W.3d 68, 75 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 256 (2012).

[3] *See id.* at 78, 80.

Nor can I agree that the majority should offer the advisory opinion that Appellant could not have prevailed on a motion to suppress. This unlitigated issue is far from clear. The record reflects that Appellant was trying to find out what the police were accusing him of. They told him that before they could tell him, they had to read him his *Miranda* warnings. Specifically, they told Appellant, "You signing this does not mean anything except that you understand. Do you understand the rights that he read to you?" But the form also includes a waiver above the signature line. Did Appellant intend to waive his rights and provide information, or did he believe that his signature meant only that he understood his rights and that the only way he could find out what police were accusing him of was to sign the form agreeing that he knew his rights? According to the transcription of the interview, he said, "I can get a lawyer to come here with me on (unintelligible). I'm trying to just (unintelligible) right now. Tell me what the accusation is." Or does the record reflect that in return for his waiver, the police offered an explanation of the accusation against him? Is that an offer of something in exchange for his waiver? What is the import of Appellant's later statement in the interview: "No, because I end this interview. I end—"?

I do not believe that this court is in a position to rule on the admissibility of that interview based on the record before us. It is not clear to me from the record whether Appellant affirmatively waived his rights or whether he believed the police when they told him that his signature simply indicated his understanding but not waiver. Nor is it clear from the record whether the statement met the requisites of

3

article 38.22 of the Texas Code of Criminal Procedure.[4]  And *Pecina* notwithstanding, I cannot join the majority's analysis of the improper use of the police interrogation after Appellant clearly indicated that he did not want to talk anymore.  Nor can I join the majority's conclusion that as constitutional violations go, this one was not so bad.

The majority correctly states that there is a two-pronged test for determining whether an appellant prevails on an ineffective assistance of counsel claim.[5]  This test is not composed of magic words that we must intone to avoid breaking our mother's back or to allow us to take two steps forward.  As the Texas Court of Criminal Appeals reminds us, "In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in retrospective speculation."[6]  The claimed deficiency here was trial counsel's failure to challenge the admissibility of the confession.  The majority does not appear to address whether the first prong was satisfied.  That means the majority has not addressed the question of whether trial counsel's deficiency is or is not affirmatively demonstrated in the trial record.  The majority instead jumps immediately to the second prong, holding that Appellant has not shown that but for trial counsel's failure to object, the outcome of the trial would

---

[4]*See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005).

[5]*See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009).

[6]*Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

have been different.  Rather than analyze the sufficiency of the evidence of guilt had

the complained-of evidence been excluded, as did the Texas Court of Criminal

Appeals in *Ex parte Martinez*,[7] the majority speculates whether the unlitigated

motion to suppress would have been granted had it been litigated.  The majority

relies on the statement in *Jackson* that if it is easier to dispose of an ineffectiveness

claim on the ground of lack of sufficient prejudice, the court should do so.[8]

The majority seems to suggest that the Texas Court of Criminal Appeals has

abandoned the precedent it established in *Thompson v. State*:

> Texas courts adhere, as we must, to the United States Supreme Court's two-pronged *Strickland* test to determine whether counsel's representation was inadequate so as to violate a defendant's Sixth Amendment right to counsel.  The defendant **must first show** that counsel's performance was deficient, i.e., that his assistance fell below an objective standard of reasonableness.  **Second, assuming appellant has demonstrated deficient assistance**, it is necessary to affirmatively prove prejudice.  In other words, appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  This two-pronged test is the benchmark for judging whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a reliable result.

> The assessment of whether a defendant received effective assistance of counsel must be made according to the facts of each case.  Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness.  Failure to make the required showing of either

---

[7]330 S.W.3d 891, 902 (Tex. Crim. App.), *cert. denied*, 131 S. Ct. 3073 (2011).

[8]Majority Op. at 8–9 (also citing *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069).

deficient performance or sufficient prejudice defeats the ineffectiveness claim. Absent both showings an appellate court cannot conclude the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. Appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective. An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel. However, while this Court has been hesitant to designate any error as per se ineffective assistance of counsel as a matter of law, it is possible that a single egregious error of omission or commission by appellant's counsel constitutes ineffective assistance. This position finds support in opinions of the United States Supreme Court, which has also held that a single egregious error can sufficiently demonstrate ineffective assistance of counsel. When handed the task of determining the validity of a defendant's claim of ineffective assistance of counsel, any judicial review must be highly deferential to trial counsel and avoid the deleterious effects of hindsight. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.[9]

To fail to address whether Appellant satisfied the first prong under the facts of this case means that the majority must either guess what evidence would have been presented to the trial court in a motion to suppress in order to opine in advance that it would have been inadequate to satisfy the second prong or must assume the exact evidence actually admitted at trial, no more and no less, would have been presented had Appellant litigated his motion to suppress. How can the majority know whether the outcome would or would not have been different had we been presented with a different record? Either (1) the record is inadequate to satisfy the first prong of the test, and we do not know from the record that trial counsel's performance was inadequate or (2) we have sufficient information to satisfy the first

---

[9]*Thompson v. State*, 9 S.W.3d 808, 812–813 (Tex. Crim. App. 1999) (emphasis added) (footnotes omitted) (citations omitted) (internal quotation marks omitted).

prong, and it tells us what evidence trial counsel could have marshaled to convince the trial court to grant his motion to suppress Appellant's statement.

I disagree with the majority's conclusion that we are intended to offer speculative, advisory opinions to guess how a trial court would have ruled on an issue never joined before it. I believe the post-*Thompson* court was explaining that, although the record may reflect a failure on the part of trial counsel, a minor mistake does not require reversal. In *Martinez*,[10] the Texas Court of Criminal Appeals held that trial counsel's failure to continue to object to gang evidence did not rise to a level requiring reversal because exclusion of the evidence not objected to would not have rendered the remaining evidence insufficient to support conviction beyond a reasonable doubt. The court stated, "When the [unobjected-to] evidence is disregarded, the remaining evidence against Applicant, in its totality, is strong and would support a finding by the jury that Applicant was a party to the offense."[11] A failure that is inconsequential does not rise to the level of ineffective assistance of counsel and, therefore, will not be designated ineffective assistance.

The majority, however, interprets this language to mean that we no longer take the prongs in logical order. Rather, the majority concludes, when the record fails to satisfy the first prong, as in the case now before this court, we jump to the second prong to first determine whether the outcome would have been different had

---

[10]330 S.W.3d at 902.

[11]*Id.*

7

trial counsel tried the case differently. Consequently, because there was no motion to suppress, the majority concludes there is no evidence to show that the complained-of evidence would have been suppressed, changing the outcome of the case. Of course, the record does not clearly show that the outcome would have been different because the issue of suppression was never joined. If the record did show that the outcome would have been different had the motion to suppress been litigated, then the record would satisfy the first prong, showing on its face that trial counsel's performance was so deficient that it fell below an objective standard of reasonableness.

Had we been presented a different record showing that the outcome would have been different, the majority would not have had to jump to the second prong without addressing the first because ineffectiveness would have been shown on the face of the record. As Judge Teague explained in his dissenting opinion in *Derrick v. State*,

> [T]o the extent that *Strickland*'s second prong requires an analysis different than the first, it is surely wrong-headed, as are all typical formulations of the harmless error doctrine which impose upon appellate court judges a responsibility to predict what the outcome of trial would have been absent the error. Because the system offers no objective method according to which such predictions can be made, reviewing courts must determine the question subjectively. It would nearly always be possible, of course, to summon back the jurors and require them to testify regarding the basis for their verdict. In this way, some reasonably pertinent evidence might be obtained concerning the probability of a different result. But again, our system seems to preclude any such methodology.

> Accordingly, requiring the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the

8

result of the proceeding would have been different" produces a catch-22 in the law. It imposes a burden of proof on the one hand and withholds the only real evidence available to meet it on the other. Appellate court judges are left to speculate regarding the probable impact of deficient representation on the unknown cogitations of particular jurors, which is precisely what the Supreme Court proceeded to do in Part V of its *Strickland* opinion.[12]

And, finally, I cannot agree with the majority's conclusion that the prosecutor's "Wheel of Fortune" analogy was a proper hypothetical fact situation to explain the State's burden of proof. As explained to the jury, the burden of proof is merely a best guess standard. The analogy could have been used if the prosecutor had said, "When you have enough letters, you are no longer guessing. You know. And you know beyond any reasonable doubt. And when we bring you enough proof, you will know beyond any reasonable doubt."[13] But telling the jury that their best guess is proof beyond a reasonable doubt is a misstatement of the law,[14] and we should say so.[15]

---

[12]773 S.W.2d 271, 280–81 (Tex. Crim. App.) (Teague, J., dissenting) (footnotes omitted) (citation omitted), *cert. denied*, 493 U.S. 874 (1989).

[13]*See* Tex. Penal Code Ann. § 2.01 (West 2011); *Whiting v. State*, 797 S.W.2d 45, 48 (Tex. Crim. App. 1990); *Dent v. State*, 43 Tex. Crim. 126, 65 S.W. 627, 642 (Tex. Crim. App. 1901) (op. on reh'g) (Henderson, J., dissenting).

[14]*See* Tex. Penal Code Ann. § 2.01; *Dingler v. State*, 705 S.W.2d 144, 146 (Tex. Crim. App. 1984) ("The State of Texas is not permitted under our law to prove its allegations through speculation, guesses, or surmises, but is required to prove its allegations beyond a reasonable doubt . . . ."); *see also, e.g.*, *Johnson v. State*, 604 S.W.2d 128, 141 (Tex. Crim. App. [Panel Op.] 1980) (Clinton, J., dissenting).

[15]*See Whiting*, 797 S.W.2d at 48.

I concur in the result because, unless the record reflects deficient representation so egregious as to have no possible justification, a lawyer must be allowed to explain whether his or her actions or inaction were part of trial strategy.[16] Some of history's greatest lawyers have based their trial performance on novel, if not bizarre, trial strategy.  There is no single script for proper trial performance.

I would hold only that the record is not sufficient to support Appellant's claim of ineffective assistance of counsel and resist the temptation to jump to the second prong of the test by offering a speculative advisory opinion of the success or lack thereof that Appellant would have enjoyed had we been presented with a different record.  Because trial counsel had no opportunity to explain trial decisions, I concur in the result only.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  May 2, 2013

---

[16] *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).