**Opinion filed February 13, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00185-CR

_____

**GARRETT DALE REEVES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 266th District Court**

**Erath County, Texas**

**Trial Court Cause No. CR15813**

## M E M O R A N D U M   O P I N I O N

Appellant, Garrett Dale Reeves, appeals his conviction for aggravated assault with a deadly weapon and causing serious bodily injury to a family member, a first-degree felony. *See* TEX. PENAL CODE ANN. § 22.02(b)(1) (West Supp. 2024). A jury found Appellant guilty and assessed his punishment at thirty years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced Appellant accordingly. In one issue, Appellant

challenges the trial court's ruling on his "motion to suppress" statements made during a custodial interrogation. We affirm.

*Factual and Procedural History*

On April 9, 2022, Deputy Garrett Koonsman with the Erath County Sheriff's Office (ECSO) responded to a reported shooting at a residence shortly before midnight. Deputy Koonsman found Appellant's father, Kent Reeves, lying near the entrance of the residence. Colby Swearingen, a licensed paramedic who responded to the scene, testified that Kent had sustained multiple "gunshot wounds throughout his abdomen[,] torso, perinium, the right flank[,] and multiple areas on his back." Kent was airlifted to Fort Worth, where he underwent twelve surgeries and was hospitalized for sixty days.

Lora Reeves, who is Kent's wife and Appellant's mother, identified Appellant as being involved in the shooting. Lora heard gunshots and reportedly told Texas Ranger Billy James Hill that when she went downstairs, she saw Appellant standing over Kent's body,[1] yelling, "[M]om, he attacked me. He attacked me." Appellant fled on foot before law enforcement arrived. Several hours later, ECSO Sergeant Chris Hill encountered Appellant approximately two and one-half miles from the residence.[2] Appellant had a nine-millimeter pistol in his possession, and when questioned about the existence of another firearm, he made a statement about "a rifle under a bridge." Officers later located said rifle, which was identified as an AR-15. Twenty-three cartridge casings from a .223 AR-15 rifle and one spent cartridge casing from a nine-millimeter were recovered at the crime scene. Appellant was arrested, taken into custody, and later interrogated by Ranger Hill.

During trial, as the State began questioning Ranger Hill about the

---

[1]Lora disputed making this statement at trial, testifying that she went downstairs to find Appellant near the doorway.

[2]Body camera footage of the arrest was admitted into evidence at trial.

interrogation, Appellant's trial counsel asked to approach the bench and contested the voluntariness of Appellant's statements, seeking protection under the Fifth and Sixth Amendments of the United States Constitution.[3] The trial court held a hearing outside the jury's presence and reviewed the recorded interrogation. Appellant's trial counsel narrowly focused on two statements Appellant made immediately following Ranger Hill's recital of Appellant's *Miranda*[4] rights: "Because of that, I don't think I want to," and "Yeah, I feel like it would be best if I wait to get a lawyer." Ranger Hill fully *Mirandized* Appellant. We include the colloquy that followed:

> RANGER HILL: Will you visit with me a little while and figure out what's going on?

> APPELLANT: Because of that, I don't think I want to.

> RANGER HILL: Oh, you don't want to?

> APPELLANT: Yeah, I feel like it would be best if I wait to get a lawyer.

> RANGER HILL: Okay. Well, I mean it may be, it may not be. But the problem is is [sic] you're already in jail, right?

> APPELLANT: Yeah.

> RANGER HILL: I mean so the worst is already, is already here, okay? Um, so it is obviously your right and you can do that, but I understand that, yeah, I see an injury there—

> APPELLANT: Yeah.

> RANGER HILL: Next to your neck and, um, you know, you weren't there this morning, so I couldn't hear your side.

> APPELLANT: Yeah.

> . . . .

> RANGER HILL: And, so, when people talk to me, I get to see how everything fits together, and I can hear their side of the story. And

---

[3]At trial, Appellant also mentioned seeking protection under Article 38.22 of the Texas Code of Criminal Procedure; however, only Appellant's constitutional complaints are at issue on appeal as confirmed by Appellant's counsel during oral argument and by an absence of briefing otherwise.

[4]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

when I present a case, like, if, if you tell me, cause I know, I know that you've made this statement, right? That, that—

APPELLANT: Mmhmm.

RANGER HILL: —That there's some sort of self-defense thing. So if all I get is that sentence, that doesn't really explain a whole lot.

APPELLANT: Mmhmm.

RANGER HILL: —and so when I write my report, all it's going to say is, you know, I heard he said this, rumor mill says this—

APPELLANT: —And that report will be used in court, right?

RANGER HILL: Yeah, that'll be used in—

APPELLANT: Okay.

RANGER HILL: —Absolutely, that'll be used in court.

APPELLANT: Yeah.

RANGER HILL: But what also will be used in court is if you sit here and line it out for me and tell me how it happened and how it was a self-defense.

. . . .

RANGER HILL: If you're just silent, then I can't hear your defense.

APPELLANT: Okay.

RANGER HILL: You know what I'm saying?

APPELLANT: If I delay that and then get a lawyer, would I be able to do that with you later on or is that gonna be a missed opportunity?

RANGER HILL: It, it's probably gonna be a missed opportunity.

APPELLANT: Yeah.

RANGER HILL: Yeah, it will probably be. Uh, like, like I said, it's up to you. I'm not here to force you.

APPELLANT: Sure.

4

RANGER HILL:    —But what I'm gonna do is I'm gonna type up everything I see, right?

APPELLANT:    Yeah.

At the conclusion of the hearing, the trial court found that Appellant had been properly *Mirandized*, and his statements regarding a request for counsel were ambiguous. The recorded interrogation was subsequently admitted into evidence at trial.[5]

*Standard of Review and Applicable Law*

"In reviewing a trial court's ruling on a motion to suppress,[6] we apply a bifurcated standard of review that gives almost total deference to the trial court's determination of historical facts that the record supports and consider *de novo* the application of the law to the facts." *State v. Heath*, 696 S.W.3d 677, 689 (Tex. Crim. App. 2024); *Baiza v. State*, 487 S.W.3d 338, 342 (Tex. App.—Eastland 2016, pet. ref'd). We will affirm the trial court's ruling on a motion to suppress if it is supported by the record and correct under any applicable theory of law. *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023).

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, protects an accused's right to counsel during a custodial interrogation.

---

[5]In the recording, Appellant claimed that he shot Kent multiple times in self-defense even though Kent was unarmed.

[6]No written motion to suppress appears in the record, and Appellant's trial counsel did not use the phrase "motion to suppress" at trial. However, during oral argument, Appellant's appellate counsel clarified that the parties proceeded at trial as they do on appeal—as if the trial court had ruled on a motion to suppress. Finding *Sweiberg v. State* instructive, we apply the standard of review for a motion to suppress on appeal. 511 S.W.2d 50, 50–51 (Tex. Crim. App. 1974). In *Sweiberg*, as here, (1) no motion to suppress was filed; (2) facts relative to the taking of the confession were developed at the trial on the merits without objection; and (3) the appellant only objected to and challenged the voluntariness of this statement shortly before it was offered in evidence. *Id.* Appellant's challenge to the trial court's ruling in *Sweiberg* was nonetheless treated on appeal as if a traditional motion to suppress had been filed. *Id.* at 51–53; *see also Dally v. State*, No. 07-22-00272-CR, 2023 WL 4940544, at *2 (Tex. App.—Amarillo Aug. 2, 2023, no pet.) (mem. op., not designated for publication) (reviewing the trial court's ruling on a motion to suppress where no motion appeared in the record and the trial court "held a 'last-minute' suppression hearing to determine the admissibility" of a recorded interrogation at trial).

*Pecina v. State*, 361 S.W.3d 68, 74 (Tex. Crim. App. 2012) (citing U.S. CONST. amend. V); *see* U.S. CONST. amend. XIV. The Sixth Amendment, meanwhile, provides that an accused "shall enjoy the right . . . to have the [a]ssistance of [c]ounsel for his defen[s]e" at all critical stages of criminal proceedings. U.S. CONST. amend. VI.; *Pecina*, 361 S.W.3d at 74; *see Gonzalez v. State*, 616 S.W.3d 585, 594 (Tex. Crim. App. 2020).

In *Miranda v. Arizona*, the Supreme Court crafted safeguards to protect this privilege in the inherently coercive atmosphere of custodial interrogations. *Pecina*, 361 S.W.3d at 75, 77–78 ("[B]oth the Fifth and Sixth Amendment rights to interrogation counsel are fully encompassed by the Fifth Amendment *Miranda* doctrine," and "both the Fifth and Sixth Amendment rights to counsel during custodial interrogation depend upon the same thing: 'What matters for *Miranda* and [*Edwards v. Arizona*, 451 U.S. 477 (1981)] is what happens when the defendant is approached for interrogation, and (if he consents) what happens during the interrogation.'" (quoting *Montejo v. Louisiana*, 556 U.S. 778, 797 (2009))); *see State v. Johnson*, No. PD-0665-23, 2024 WL 4757857, at *3 (Tex. Crim. App. Nov. 13, 2024). *Miranda* and its progeny make clear that a suspect's statement made during a custodial interrogation may only be introduced at trial "if the person voluntarily and intelligently waives his *Miranda* rights, including the right to have an attorney present during questioning." *Pecina*, 361 S.W.3d at 75; *see Vega v. Tekoh*, 597 U.S. 134, 143–49 (2022) (examining jurisprudence since *Miranda*). "If the suspect effectively waives his right to counsel after receiving the *Miranda* warnings, law enforcement officers are free to question him." *Davis v. United States*, 512 U.S. 452, 458 (1994) (citing *North Carolina v. Butler*, 441 U.S. 369, 372–76 (1979)). "But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or

6

the suspect himself reinitiates conversation." *Id.* (citing *Edwards*, 451 U.S. at 482, 484–85).

Any invocation of a defendant's rights under the Fifth and Sixth Amendments must be unambiguous and articulated with sufficient clarity so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Pecina*, 361 S.W.3d at 79 (quoting *Davis*, 512 U.S. at 459). Merely using the words "attorney" or "lawyer" is not sufficient, and law enforcement is not required to clarify a defendant's request. *See Davis v. State*, 313 S.W.3d 317, 339–40 (Tex. Crim. App. 2010) (collecting cases); *see also Hartwell v. State*, 476 S.W.3d 523, 529–32 (Tex. App.—Corpus Christi–Edinburg 2015, pet. ref'd) (holding that defendant's question, "'[S]hould I maybe call my attorney friend and see what he thinks,' was not an unequivocal and unambiguous request for counsel"); *Pratt v. State*, No. 11-14-00329-CR, 2016 WL 2976111, at *2 (Tex. App.—Eastland May 19, 2016, no pet.) (mem. op., not designated for publication) (concluding the same where Appellant stated, "I think I need a lawyer, bro"). "Whether a statement referring to a lawyer constitutes a clear request for counsel depends on the statement itself and the totality of the circumstances surrounding the statement." *Davis*, 313 S.W.3d at 339.

### *Analysis*

As indicated above, Appellant was *Mirandized* and then when asked if he was willing to speak to law enforcement, Appellant stated: "Because of that, I don't think I want to," and then "Yeah, I feel like it would be best if I wait to get a lawyer." Appellant argues that the context and sequence of communications determinatively proves that he clearly and unequivocally invoked his constitutional right to counsel. We disagree.

Appellant's first statement, "Because of that, I don't think I want to," is an ambiguous invocation of his right to counsel as it lacks any mention of counsel, and

7

an invocation of a suspect's right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *See Davis*, 512 U.S. at 459 (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991)); *Dinkins v. State*, 894 S.W.2d 330, 352 (Tex. Crim. App. 1995) ("[W]e believe that *Davis*, requires, at a minimum, that a suspect express a definite desire to speak to someone, and that person be an attorney."); *see also Pautenis v. State*, No. 02-23-00019-CR, 2024 WL 273517, at *4 (Tex. App.—Fort Worth Jan. 25, 2024, pet. ref'd) (mem. op., not designated for publication) (concluding the same). At most, the statement could have reasonably been interpreted as Appellant's general reluctance to speak with law enforcement and an *attempt* to invoke another constitutional right—the right to remain silent. *See* U.S. CONST. amend. V; *cf. Kupferer v. State*, 408 S.W.3d 485, 491 (Tex. App.—Houston [1st Dist.] 2013, pet. ref'd) ("Kupferer's statement, 'To tell you the truth, I really don't want to talk about it, but I mean,' was not a clear and unambiguous invocation of his right to remain silent."); *Davis v. State*, No. 06-05-00222-CR, 2007 WL 858782, at *3 (Tex. App.—Texarkana Mar. 23, 2007, pet. ref'd) (mem. op., not designated for publication) (concluding that appellant's statement, "I really don't want to talk about it," was an "ambiguous invocation" of his right to remain silent).

After Appellant's first statement, Ranger Hill sought to clarify the statement by asking, "Oh, you don't want to," to which Appellant replied, "Yeah, I feel like it would be best if I wait to get a lawyer." *See generally Davis*, 512 U.S. at 461 ("Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to the subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel."). Though Appellant's second statement includes the word "lawyer," it is similar to statements we have previously held to be ambiguous. *See Pratt*, 2016 WL 2976111, at *2; *Hogue v. State*, No. 11-11-00143-

8

CR, 2013 WL 1748836, at *3 (Tex. App.—Eastland Apr. 18, 2013, no pet.) (mem. op., not designated for publication) ("Appellant's statement, 'I feel like I need a lawyer,' was not an unambiguous request or express statement [that] he wanted an attorney that required Hunnicutt to halt the interrogation."). *Pratt* is particularly instructive. In *Pratt*, following the appellant's statement, "I think I need a lawyer, bro," the interviewing officer stated, "I'm just trying to give you a chance," to which the appellant interrupted with, "No." *Pratt*, 2016 WL 2976111, at *1. The interviewing officer then completed his statement, "—to give . . . an explanation," and the appellant responded, "Well, s—t, I don't need a f----n' chance, cause I didn't do none of this s—t." *Id.* While we concluded that the appellant's statement had not been a clear request for counsel but was instead an amorphous "statement of [his] own thoughts," we also considered the fact that the appellant "continued to engage with law enforcement after his verbal contemplation." *Id.* at *2.

Ranger Hill, as the interviewing officer did in *Pratt*, posed a series of clarifying prompts in response to the ambiguous nature of Appellant's initial statements. Regarding his report, Ranger Hill was clear that, "Absolutely, that'll be used in court. . . . But what also will be used in court is if you sit here and line it out for me and tell me how it happened and how it was a self-defense." Appellant continued to engage with Ranger Hill, inquiring what would occur "[i]f [he] delay[ed] [speaking to Ranger Hill] and then get a lawyer." This dialogue is further "indicative of the fact that [Appellant] had not yet unequivocally asserted his right to counsel." *See Natividad v. State*, No. 11-17-00173-CR, 2019 WL 2479833, at *4 (Tex. App.—Eastland June 13, 2019, pet. ref'd) (mem. op., not designated for publication); *see also Davis*, 313 S.W.3d at 341 ("Appellant's statement, 'I should have an attorney,' was not a request for an attorney is also bolstered by the fact that he subsequently asked the detectives why he should help them out.").

On this record, we conclude that Appellant did not unequivocally and unambiguously invoke his right to counsel, and that therefore, the trial court properly denied Appellant's motion to suppress his statements. *See Pecina*, 361 S.W.3d at 81; *see Espinosa*, 666 S.W.3d at 667. We overrule Appellant's sole issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


February 13, 2025

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.