

**NUMBER 13-19-00498-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

---

**EDDIE RODRIGUEZ,**                                                         **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                      **Appellee.**

---

**On appeal from the 290th District Court
of Bexar County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Tijerina
Memorandum Opinion by Justice Tijerina**

A jury convicted appellant Eddie Rodriguez of aggravated kidnapping, a first-degree felony, aggravated assault with a deadly weapon, a second-degree felony, and attempted sexual assault, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 20.04(c),

22.011, 22.02(a)(2).[1] The jury assessed punishment at fifty-five years' imprisonment for aggravated kidnapping, twenty years for aggravated assault, and ten years for attempted assault. *See id*. §§ 12.32(a), 12.33(a), 12.34(a). By three issues, Rodriguez claims the trial court: (1) abused its discretion during voir dire by denying his "for cause" challenge to a venire member; (2) erred by denying his motion to suppress; and (3) erred by admitting a photo lineup into evidence. We affirm.

## I.  BACKGROUND

During the State's case-in-chief, Mireya Saldana testified that she knew Rodriguez because he was her brother's friend, and they all grew up in the same neighborhood. On September 29, 2017, Rodriguez approached Saldana at the Corona nightclub, they danced together, and they exchanged numbers. They went their separate ways when the club closed around 2:00 a.m.

Rodriguez repeatedly texted her, and he arrived at her friend's apartment, where she arrived after the club. A friend escorted Saldana outside to meet Rodriguez, but Saldana stated that she told the friend, "This is one of my brother's friends. I trust him. It's okay." Saldana stated she and Rodriguez were having a conversation, and she insisted that they go inside. Rodriguez then pulled out a gun, pointed the gun at her, and demanded she get inside his truck. Saldana stated she got into his truck, and Rodriguez drove away. Saldana testified that Rodriguez threw her cell phone out of the window while the gun he brandished sat on his lap. Saldana asked Rodriguez, "Why are you doing this?" to which he responded, "Because you're exactly like your brother that's why . . .

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, this case was transferred to this Court from the Fourth Court of Appeals in San Antonio. *See* TEX. GOV'T CODE ANN. § 73.001.

[your brother] took Fernanda away from me."[2]

Rodriguez drove Saldana to a dark alley, put a condom on, and tried taking off her skirt and removing her panties. Saldana stated that she pleaded with him to stop, and he hit her on the side of her head with the gun; however, after she gave up physically resisting, he ordered her off the truck. According to Saldana, she begged Rodriguez for her life when he shot her in the chest. As she stumbled to the ground, he got into his truck and drove off. She ran to the nearest home and asked for help.

Rodriguez's defense was that the State had not met its burden of proof because there was "no weapon, no vehicle, and no biological evidence" connecting Rodriguez to the crime. Rodriguez also presented an alternate theory that the perpetrator was a friend of his that admired Rodriguez and was with Rodriguez on the night of September 29, 2017. A jury convicted Rodriguez, and this appeal followed.

## II.  VOIR DIRE

By his first issue, Rodriguez claims the trial court abused its discretion by denying his "for cause" challenge to venire member number five. The State argues that Rodriguez failed to preserve error for our review. We agree with the State.

### A.  Preservation of Error

To preserve an objection to the denial of a challenge for cause, a defendant must have: (1) used all of his peremptory strikes, (2) asked for and was denied additional peremptory strikes, and (3) accepted an identified objectionable juror whom defendant would not otherwise have accepted had the trial court granted the defendant's challenge for cause (or granted him additional peremptory strikes so that he might strike the juror).

---

[2] Saldana's brother had been married to his wife, Fernanda, for seven years.

3

*Johnson v. State*, 43 S.W.3d 1, 5–6 (Tex. Crim. App. 2001); *Chambers v. State*, 866 S.W.2d 9, 22 (Tex. Crim. App. 1993). To establish harm for an erroneous denial of a challenge for cause, the defendant must show on the record that he used a peremptory strike to remove the venireperson and thereafter suffered a detriment from the loss of the strike. *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex. Crim. App. 2014); *Chambers*, 866 S.W.2d. at 23 ("When the trial judge denies a valid challenge for cause, forcing the defendant to use a peremptory strike on a panel member who should have been removed, the defendant is harmed if he would have used that peremptory strike on another objectionable juror.").

B.     **Discussion**

During voir dire, Rodriguez challenged venire member five for cause on the basis that venire member five "showed a bias towards law enforcement" because he had previously served on a criminal jury before and reached a guilty verdict in that case. The trial court denied the challenge:

> [The Court:]   . . . did you have any motions on [venire member] No. 5?
>
> [Rodriguez:]  Yes.
>
> [The Court:]  And what is your motion, sir?
>
> [Rodriguez:]  . . . to strike him.
>
> [The Court:]  For? . . . What's your basis for cause, sir?
>
> [Rodriguez:]  I think there were a couple of questions where he showed a bias towards law enforcement.
>
> [The Court:]   . . . I'm going to deny that. I don't think that that has [been] shown for cause.

4

The record demonstrates that Rodriguez: (1) failed to use a preemptory strike on the complained-of venire member; (2) failed to exhaust all of his preemptory strikes; (3) failed to request more peremptory strikes; and (4) failed to identify objectionable venire members who sat on the jury and on whom Rodriguez would have exercised peremptory challenges had he not exhausted his peremptory challenges to correct the trial court's denial of his challenge for cause. *See Buntion v. State*, 482 S.W.3d 58, 83 (Tex. Crim. App. 2016) (providing that the defendant preserved error where he made eleven specific challenges for cause, used peremptory challenges on the complained-of venire members, exhausted all of his peremptory strikes, was denied his request for additional strikes, and was forced to accept an objectionable juror to sit on the jury); *Johnson*, 43 S.W.3d at 7. The jury was subsequently empaneled without objection from Rodriguez, and venire member five served on the jury. *See Dukes v. State*, 486 S.W.3d 170, 176 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (providing that the defendant preserved error by objecting "to the empanelment of several jurors on whom he claimed he would have used peremptory challenges had his challenges for cause been granted or had he received the additional strikes that he had requested"); *see also Tillman v. State*, No. 14-98-01233-CR, 2001 WL 543666, at *3, 2001 (Tex. App.—Houston [14th Dist.] May 24, 2001, pet. ref'd) (mem. op., not designated for publication) (defendant preserved error when he requested and was denied ten additional peremptory strikes after the clerk called the names of the jurors but before they were sworn). Accordingly, Rodriguez has failed to preserve error for our review. *See Comeaux*, 445 S.W.3d at 750 ("The steps to preserve error and establish harm are intended to allow the trial judge every opportunity to correct

5

error and to allow the defendant to demonstrate that he did not have the benefit of using his peremptory challenges in the way that he desired."); *Chambers*, 866 S.W.2d at 23.

Nonetheless, even if Rodriguez had preserved error, a venire member's service on a prior jury in which a conviction resulted is not a valid challenge for cause under the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 35.16. We overrule his first issue.

### III.    MOTION TO SUPPRESS

By his second issue, Rodriguez argues the trial court improperly denied his motion to suppress his videotaped interview. Specifically, Rodriguez asserts he did not understand, and thus did not voluntarily waive, the *Miranda* warnings. *See Miranda v. Arizona*, 384 U.S. 463, 444 (1966).

### A.    Suppression Hearing

At trial, Rodriguez sought to suppress the video recording of his interview. The trial court held a hearing outside the presence of the jury to determine whether Rodriguez's statement to law enforcement was voluntary and thus admissible. San Antonio Police Officer Raul Martinez testified that he obtained an arrest warrant for Rodriguez, and Rodriguez was brought into the police department for questioning. Before the interview began, Officer Martinez advised Rodriguez of his *Miranda* rights by reading from a written form "line by line" and asking Rodriguez whether he understood each line. Officer Martinez stated that Rodriguez indicated he understood every line except the last line. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (providing that the defendant has the right to terminate the interview at any time). Consequently, Officer Martinez handed Rodriguez the form and allowed Rodriguez to read each right himself. Thereafter, Officer Martinez

6

tried to "break it down and explain it a little bit better," explaining to Martinez that the last right was basically informing Martinez that he "could invoke any of these rights at any time." Officer Martinez asked Rodriguez again if he understood to which Rodriguez affirmed that, "yes" he understood them and signed the form. Rodriguez's video-recorded statement was admitted into evidence.

## B.      Standard of Review

In reviewing the trial court's ruling on a motion to suppress statements made as a result of custodial interrogation, we apply a bifurcated standard of review. *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Nelson v. State*, 463 S.W.3d 123, 126 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd). We review the ruling considering the totality of the circumstances, giving total deference to the trial court on questions of historical fact, as well as its application of law to fact questions that turn on credibility and demeanor. *Pecina*, 361 S.W.3d at 79; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). But we review de novo the trial court's rulings on questions of law and mixed questions of law and fact that do not depend on credibility determinations. *Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349. We view the record in the light most favorable to the trial court's ruling and reverse the judgment only if it lies outside the zone of reasonable disagreement. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011); *Nelson*, 463 S.W.3d at 126.

## C.      Applicable Law

"In *Miranda v. Arizona*, the Supreme Court crafted safeguards to protect this 'privilege against self-incrimination' in the inherently coercive atmosphere of custodial

7

interrogations." *Pecina*, 361 S.W.3d at 75 (citing *Miranda*, 384 U.S. at 441). Under *Miranda*, "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Miranda*, 384 U.S. at 444.

Article 38.22 of the code of criminal procedure establishes additional procedural safeguards for securing the privilege against self-incrimination. TEX. CODE CRIM. PROC. ANN. art. 38.22; *see Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010). Article 38.22 provides that an accused's oral statement made as a result of custodial interrogation shall not be admissible in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Joseph*, 309 S.W.3d at 23–24 (citing TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3).

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *Id*. at 24. A waiver of rights does not have to be express but may be inferred from the actions and words of the person interrogated. *Id*. at 25. In evaluating whether appellant knowingly, intelligently, and voluntarily waived his *Miranda* rights, we use a two-pronged test, in which we ask whether: (1) the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *Id*. We look to the totality of the circumstances in determining whether a statement was made voluntarily. *Id*.

**D.    Awareness**

At the start of the interview, in English, Officer Martinez asked Rodriguez what his full name and date of birth were, which Rodriguez provided. The video shows that Rodriguez appeared eager to speak, but Officer Martinez immediately stopped him and explained that before Rodriguez could say anything, he needed to read Rodriguez his rights first to which Rodriguez replied, "Yes, sir." Then Officer Martinez read his *Miranda* warnings from a form, which repeatedly informed Rodriguez that he did not have to say anything. The warnings read to Rodriguez made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights. *See Miranda*, 384 U.S. at 444, TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. When Officer Martinez asked if Rodriguez understood his rights, Rodriguez affirmatively stated that he understood all the rights "except the last one." Officer Martinez responded by handing Rodriguez the form for him to read. Rodriguez proceeded to reach each statutory right. Officer Martinez explained the last line, "basically these are your rights and they can be invoked at any time," and Rodriguez responded with "yes, sir." Once Officer Martinez confirmed that Rodriguez understood all his rights including the last one, Rodriguez signed his name and dated the form. His conduct during those portions of the interview demonstrated that he had the requisite level of comprehension to waive his *Miranda* rights. *See Joseph*, 309 S.W.3d at 27.

**E.    Voluntariness**

The video shows that immediately after being warned by Officer Martinez that he had the right to remain silent and that he did not have to make any statement to anyone, Rodriguez willingly participated in an almost hour-long interview. Rodriguez did not ask

9

that the interview be stopped.[3] In fact, when Officer Martinez asked Rodriguez to "tell [him] what happened that night," Officer Martinez testified that Rodriguez "volunteered all the information. [Officer Martinez] didn't say anything else." The video substantiates Officer Martinez's testimony that he let Rodriguez "do all the talking." For example, Rodriguez was very detailed about his night, and he provided Officer Martinez with a step-by-step sequence of events that occurred the very next day, suggesting that the information he did choose to provide was given voluntarily.[4] Officer Martinez did not resort to "physical or psychological pressure to elicit [further] statements." *Id*. at 26 (citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). Furthermore, the record shows no evidence of intimidation or coercion. *See id*. Finally, Officer Martinez did not promise Rodriguez anything, so there appears to be no possibility that a promise from police could have jeopardized the voluntariness of Rodriguez's statement. *See id*. The totality of the circumstances surrounding the interrogation shows Rodriguez's waiver was voluntary. Thus, it appears that the waiver resulted from a free and deliberate choice without intimidation, coercion, or deception. We overrule his second issue.

## IV.    ADMISSION OF EVIDENCE

By his third issue, Rodriguez asserts the trial court erred by admitting the photo lineup into evidence because the lineup had been "reordered."[5]

---

[3] Although Rodriguez requested an attorney after forty minutes of being questioned, the State retracted that portion of the video recording, and it was not admitted into evidence or played for the jury.

[4] In the interview, Rodriguez corroborated Saldana's statement up to when he arrived at the apartment, Rodriguez claimed they parted ways, and he did not reach out to Saldana again. He stated that is all that he could remember from that night.

[5] Six photographs were admitted into evidence and marked with numbers one through six indicating the order of the photographs as they appeared to Saldana. Rodriguez's photo was marked number four. Officer Martinez testified that after Saldana identified Rodriguez in the line-up, he moved photo number four for his convenience to distinguish it as the photo Saldana identified. Thus, regardless of the order photo

10

On appeal, the extent of his argument is as follows:

> [T]he "reordered" lineup offered below, by definition, does not fairly and accurately depict the same lineup that the police used against appellant on October 20, 2017. Indeed, Martinez'[s] purposeful effort to reorder that array cause[s] the instant lineup to be less fair and less accurate than the one the police used against [Rodriguez] nearly two [2] full years earlier. By holding that the adulterated lineup is the functional equivalent of the original version, the trial court abused its discretion.

Rodriguez's bare claim that the lineup does not fairly and accurately depict the same lineup as that used in Rodriguez's case, with nothing else, is conclusory, and does not contain any citations to appropriate authorities. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). "It is incumbent upon [Rodriguez] to cite specific legal authority and to provide legal arguments based upon that authority." *Bohannan v. State*, 546 S.W.3d 166,180 (Tex. Crim. App. 2017). Accordingly, his third issue is inadequately briefed, and we decline to address it. Nonetheless, at trial Rodriguez objected on the basis that the lineup "was not in its original form," and the State responded that Rodriguez's objection was not a legal objection. Thus, his objection in the trial court does not comport with his complaint on appeal. *See Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012) ("The point of error on appeal must comport with the objection made at trial."). We overrule his third issue.

## V.    CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

---

number four now appears, the jury could have easily discerned that Rodriguez's photo appeared fourth in the array when Saldana positively identified Rodriguez.

11

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
24th day of September, 2020.