

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-18-00028-CR
_____

JEREMY DAVID SPIELBAUER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 251st District Court
Randall County, Texas
Trial Court No. 26,626-C; Honorable Ana Estevez, Presiding

October 12, 2021

## OPINION ON REMAND

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Jeremy David Spielbauer, was charged with capital murder in the death of his former wife, Robin Spielbauer.  A jury convicted him of the lesser-included offense of murder and sentenced him to confinement for life and also assessed a $10,000 fine. On direct appeal, Appellant presented two issues challenging his conviction.  By his first issue, he complained of the trial court's denial of challenges for cause to two members of

the venire panel and by his second issue, he alleged his two former pre-trial attorneys, Dennis Boren and Len Walker, were ineffective when, during the course of the homicide investigation, they allowed him to submit to interviews with investigators under the auspices of a use immunity agreement without any understanding of the evidence known to the investigators. On direct appeal, this court agreed with Appellant that the trial court had abused its discretion in denying his challenges for cause. We reversed his conviction and remanded the cause to the trial court for further proceedings. *See Spielbauer v. State*, 597 S.W.3d 516, 529 (Tex. App.—Amarillo 2020), *rev'd*, 622 S.W.3d 314 (Tex. Crim. App. 2021). On the State's petition for discretionary review, the Texas Court of Criminal Appeals abrogated prior case law concerning the State's failure to preserve error, reversed this court's judgment, and remanded the case to us for consideration of Appellant's remaining issue on ineffective assistance of counsel. *Spielbauer*, 622 S.W.3d at 317.

**BACKGROUND**

Appellant's conviction is the result of a love triangle gone wrong. He and Robin married in 2005 and had two children. Years later, they befriended Katie Phipps. Eventually she and Appellant had an affair. In 2012, Robin divorced Appellant and a year later, he married Katie. Needless to say, Robin and Katie's relationship was acrimonious. At times, they engaged in physical altercations. In early 2014, Katie began to suspect that Appellant and Robin were having an affair.

On April 8, 2014, passers-by on a dirt road discovered Robin's body lying motionless near her Tahoe. Law enforcement officers were called, and an investigation ensued. Although not immediately apparent at the scene, an autopsy showed that Robin

2

had suffered blunt force trauma and had been shot in the back of the head. The investigation revealed that pink plastic pieces found at the scene and pink smears transferred onto the window of the Tahoe matched a pink gun owned by Katie. The gun was confirmed as the murder weapon, and given Robin and Katie's relationship, authorities suspected Katie of the murder and began to build a case against her. She was arrested within days of the murder.

Beginning on April 9, 2014, one day after the murder, Sergeant Mongold of the Randall County Sheriff's Office conducted the first of three recorded interviews with Appellant. The interviews were based on the premise that Katie had killed Robin after suspecting that Appellant and Robin were having an affair.

Shortly after the murder but before the next two recorded interviews occurred, Appellant retained Boren and Walker for the purpose of entering into a *Use Immunity Agreement* with the State. The agreement provided that if Appellant gave "truthful, accurate, and complete information about the death of Robin Spielbauer, that said information [would] not be used against [him] in any prosecution." It further provided that if Appellant did not provide information that was "truthful, accurate, and complete," the agreement would be void and his promised immunity would be forfeited. The agreement was signed by Appellant on April 22, 2014, the same day as the second interview. During that interview, while Sergeant Mongold briefly stepped out, one of Appellant's attorney's suggested that Appellant discuss the location of Katie's pink gun. The gun had not yet been confirmed as the murder weapon. On April 30, at the request of counsel, Sergeant Mongold again interviewed Appellant. During the interview, Appellant admitted he had been with Robin at the crime scene prior to the murder.

3

After the interviews, investigators continued to gather information. It was not until more than a year later that Katie was ruled out as a suspect by experts in cell phone forensics. They determined that she could not have been at the crime scene at the time of the murder. The investigation began anew, and Appellant became a suspect when experts placed his cell phone at a particular location and time near the scene of the murder. Also an image of Appellant's vehicle was also captured on a bank's camera near the scene of the murder close to the time of the murder. That evidence showed that Appellant had the opportunity to commit the murder and return home even though he had claimed he had not left his home on the night of the murder.

Authorities suspected that Appellant had killed Robin with Katie's pink gun to frame her. During the interviews with Sergeant Mongold, Appellant's version of events and timelines varied. Based on the results of the new investigation, the State presented the grand jury with a capital murder case. The grand jury returned a true bill of indictment, and Appellant was arrested on April 16, 2016, and subsequently convicted of murder.

Appellant's sole remaining issue on direct appeal is a claim that his counsel (pre-indictment counsel, not trial counsel) provided him with ineffective assistance during his interviews with Sergeant Mongold. For the reasons expressed herein, we find no reversible error.

### STANDARD OF REVIEW—INEFFECTIVE ASSISTANCE OF COUNSEL

The right to reasonably effective assistance of counsel in a criminal prosecution is guaranteed by the Sixth Amendment to the United States Constitution and Article 1, Section 10 of the Texas Constitution. U.S. CONST. amend. VI; TEX. CONST. art. 1, § 10.

4

To establish a claim based on ineffective assistance, an appellant must show that (1) his counsel's representation fell below the objective standard of reasonableness and (2) there is a reasonable probability that but for counsel's deficiency the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In other words, an appellant must show his counsel's performance was deficient and that he was prejudiced by the deficiency. *State v. Gutierrez*, 541 S.W.3d 91, 98 (Tex. Crim. App. 2017).

A claim of ineffective assistance of counsel must also be firmly demonstrated in the record. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011) (citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999)). "It is not sufficient that appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013).

### ANALYSIS

As directed by the Texas Court of Criminal Appeals, we now address Appellant's sole remaining issue by which he contends he was denied effective assistance of counsel when his attorneys allowed him to be interviewed by homicide investigators under the auspices of a *Use Immunity Agreement,* without a complete understanding of the evidence known to the investigators. Specifically, Appellant contends his attorneys had no reasonable trial strategy to justify allowing him to be questioned when it was clear they were unaware of the existence of evidence that would directly contradict his version of

5

events. This deficiency by his attorneys, he submits, allowed the State to obtain inconsistent and incriminating information that it would not otherwise have had. He further argues that the State then used that information against him in its prosecution. What Appellant fails to consider is the fact that he was not candid and honest with his counsel concerning the degree of his involvement in the homicide in the first place.

The Fifth and Sixth Amendments of the United States Constitution protect different interests. The Fifth Amendment provides a privilege against self-incrimination to a suspect who is in custody and the privilege is triggered once that suspect has been given his *Miranda* warnings. *Pecina v. State*, 361 S.W.3d 68, 74-75 (Tex. Crim. App. 2012) (citing *Miranda v. Arizona*, 384 U.S. 436, 441, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). The Sixth Amendment right to trial counsel attaches once the "adversary judicial process has been initiated." *Pecina*, 361 S.W.3d at 76 (citing *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S. Ct. 2079, 173 L. Ed. 2d 955 (2009)). The Sixth Amendment right guarantees a defendant the right to counsel at all "critical" stages of a criminal proceeding. *Montejo*, 556 U.S. at 786. "[C]ritical stages include arraignments, post-indictment interrogations, post-indictment lineups, and the entry of a guilty plea." *Missouri v. Frye*, 566 U.S. 134, 140, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012) (note the United States Supreme Court did not specifically include *pre-indictment* interviews or interrogations). Moreover, the Sixth Amendment right to counsel is offense specific and attaches only to an offense for which a prosecution has been initiated. *Texas v. Cobb*, 532 U.S. 162, 167-68, 121 S. Ct. 1335, 149 L. Ed. 2d 321 (2001); *Rubalcado v. State*, 424 S.W.3d 560, 570 (Tex. Crim. App. 2014).

6

Generally, in Texas, the right to trial counsel is triggered by judicial arraignment or by being taken before a magistrate as described in article 15.17 of the Texas Code of Criminal Procedure.[1] Magistration marks the initiation of adversary judicial proceedings and "plainly signals" the attachment of a defendant's right to trial counsel. *Pecina*, 361 S.W.3d at 77 (citation omitted). An uncharged suspect may invoke his Fifth Amendment right to counsel at any stage in a criminal proceeding, including pre-indictment. *Id.* at 78. A defendant who has been arraigned, however, may invoke his Sixth Amendment right to counsel for purposes of custodial interrogation after his *Miranda* warnings have been administered. *Id*.

Here, Appellant, with counsel present, was interviewed by Sergeant Mongold as a witness in the investigation into Robin's murder. He was not considered a suspect until more than a year after the murder when Katie was cleared of the charges against her. Furthermore, he was not charged and arrested until April 16, 2016, more than two years after being interviewed by Sergeant Mongold.

Regardless of his status as a witness to the investigation, Appellant retained counsel to negotiate a *Use Immunity Agreement*. At that time, no adversary judicial process or prosecution against him had been initiated and thus, the constitutional right to counsel had not yet attached. Ergo, he had no constitutionally protected right to the effective assistance of counsel.

---

[1] Article 15.17 describes the duties of the arresting officer and magistrate once a suspect has been arrested. TEX. CODE CRIM. PROC. ANN. art. 15.17 (West Supp. 2020).

Even if the right to counsel had been triggered, as in most cases, the record on direct appeal is not sufficiently developed and "cannot adequately reflect the failings of trial counsel" for an appellate court "to fairly evaluate the merits of such a serious allegation." *Lopez*, 343 S.W.3d at 143.

In the underlying case, Appellant filed a motion for new trial but did not allege ineffective assistance of counsel.[2]  No hearing was held on the motion.  Appellant's attorneys were never given an opportunity to explain their strategy in representing him during the interview phases of the investigation or in negotiating his *Use Immunity Agreement*.  An appellate court should not denounce counsel as being ineffective without counsel having had the opportunity to explain their trial strategy.  *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

We conclude the complaints raised by Appellant that he characterizes as being "ineffective assistance" occurred at a time when he had no Sixth Amendment right to counsel, much less the right to effective representation.  His sole remaining issue is overruled.

### CONCLUSION

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Publish.

---

[2] We acknowledge that ineffective assistance claims may be raised for the first time on appeal. *Robinson v. State*, 16 S.W.3d 808, 940, 942 (Tex. Crim. App. 2000).