

# NUMBER 13-24-00411-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

CHRISTIAN HERNANDEZ
RODRIGUEZ,                                                             Appellee.

## ON APPEAL FROM THE 103RD DISTRICT COURT
## OF CAMERON COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices West and Fonseca
Memorandum Opinion by Chief Justice Tijerina**

The State of Texas appeals the trial court's order granting appellee Christian

Hernandez Rodriguez's motion to suppress. We reverse and remand.

### I.        BACKGROUND

On November 4, 2020, Hernandez was indicted for continuous sexual abuse of a

young child, a first-degree felony. *See* TEX. PENAL CODE ANN. § 21.02(b). On September 14, 2023, Hernandez filed a motion to suppress, asserting any statements he made to law enforcement "were involuntary and were coerced and enticed" and that he was deprived of his "right to counsel" because he "did not make an intelligent and knowing waiver of that right." He further argued that he signed a *Miranda* waiver "because he believed the promise that it would be better for him to agree with the officer." On August 14, 2024, the trial court held a pretrial hearing on the motion to suppress.

At the hearing, Investigator Eli Cano testified that while he was a criminal investigator for the Cameron County Sheriff's Office (CCSO), he interviewed Hernandez. According to Cano, while he transported Hernandez to the sheriff's office, he did not make any promises or threats, did not pressure Hernandez, and did not coerce Hernandez into making a statement at any time. Cano stated that he provided Hernandez with his *Miranda* warnings prior to the interrogation by reading off a "Miranda Warning and Waiver" form, that Cano understood the warnings, and that Cano waived his rights by signing the waiver. A copy of the waiver was admitted into evidence.

A video recording of the interrogation was admitted into evidence, and the following is depicted. Cano began by asking if Hernandez was named Christian, and Hernandez nodded yes. Cano then introduced himself and stated that he was going to read Hernandez his *Miranda* warnings and waiver first. He asked whether Christian was Hernandez's first name, and Hernandez responded, "Yeah." Cano asked if he had a middle name or what last name he went by, and Hernandez responded, "Hernandez." The following transpired:

Cano: You mentioned earlier Rodriguez, something?

| Hernandez: | Yeah, Rodriguez is also my middle name. |
| --- | --- |
| Cano: | So you go by Christian Rodriguez Hernandez? |
| Hernandez: | No, Hernandez is first. |
| Cano: | Christian Hernandez. |
| Hernandez: | Yes. |
| Cano: | And then Rodriguez, or just like that? |
| Hernandez: | Yeah, and then Rodriguez, but they usually just call me Christian Hernandez. |
| Cano: | Your date of birth Christian? |
| Hernandez: | Um. August five two thousand two. |
| Cano: | So you're eighteen, right? |
| Hernandez: | Yeah. |
| Cano: | Before I ask you any questions, I'm going to make sure you understand your rights. |

Cano advised Hernandez of his *Miranda* rights by reading from the form verbatim and pointing out each warning with his index finger as he read. After Cano finished the last warning, he then told Hernandez, "You can say, you know what Investigator I don't want to talk [any]more. You can. You don't have to. I can't force you to. If you understand those, initial one through five please." Hernandez asked if he should initial "C.H.," and Cano said, "Yeah, just however you initial, just initial one through five." Again, Hernandez asked if he should initial "C.H. or C.H.R." Cano responded, "However you do it."

Hernandez initialed the *Miranda* warnings. Then Cano stated, "This is what you call a waiver," proceeded to read the waiver portion verbatim, and asked "Clear?" Hernandez nodded his head up and down in affirmance. Thereafter, Hernandez

3

answered nearly all of Cano's questions in English in an almost hour-long interview.[1]

At the hearing, Hernandez testified that he moved to the United States when he was in sixth grade and knew zero English; he did not begin learning English until he was in eighth grade. It was not until high school that he began to practice English. According to Hernandez, although he made Cs and Ds in school, all his teachers helped him earn promotion to the next grade level though he acknowledged that he made an 82 in English II, 85 in English III, 87 in World History, and 85 in U.S. History. Hernandez testified that he failed out of college in his first semester because he fell behind in online classes during COVID in high school.

Regarding the *Miranda* warnings that Cano read him, Hernandez testified that he did not know the meaning of some of the terms and instead confused them with common meanings. He testified that he confused "right" in "the right to remain silent" with answering questions correctly; "statement," which he confused with writing an essay; "court of law," which he confused with an actual room; "present", which he confused with a gift; "terminate," which he confused with the *Terminator* movie; and "subject," which he confused with school subjects. He testified that he did not know the meaning of the words "remain silent," "may be used against you," "trial," "against," "consult" "attorney," "to advise you prior," "employ," "appointed," "waiver," "consult," "coercion," and "threat."

Although Hernandez signed the waiver, he claimed he did not know what he was signing. According to Hernandez, on the way to sheriff's office, Cano told him that if Hernandez signed the waiver, Hernandez would be able to go back home. Hernandez claimed that Cano told him if Hernandez "played the deny cards, [Cano] wouldn't be able

---

[1] Hernandez did answer a couple of questions in Spanish.

4

to help [Hernandez] out." Hernandez trusted Cano and did not think that Cano would harm him. Hernandez said he "just wanted to go back home," so he signed the waiver.

The trial court granted Hernandez's motion to suppress, and the State requested findings of fact and conclusions of law. The trial court made the following findings: (1) on route to the sheriff's office, Cano promised Hernandez that the court "would help [Hernandez] if he made a statement" and "would be able to go home," but without making a statement, the court "would not help him"; (2) during the interrogation Cano "stood up and hovered physically over [Hernandez] to read him his *Miranda* rights"; (3) Cano took twenty seconds to read the *Miranda* rights; (4) Cano did not understand any of the legal terminology at the time he signed the waiver; (5) the *Miranda* warning and waiver were signed within two minutes; (6) although the waiver had a "witness signature requirement" a witness was absent, resulting in an unverified document; (7) Hernandez believed signing the waiver would help him and did not understand the legal consequences; and (8) Hernandez did not sign it freely and voluntarily without promises, threats, or coercion. The State appealed. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (granting the State the right to an interlocutory appeal of a granted motion to suppress).

## II.    MOTION TO SUPPRESS

The State argues that the trial court erred in granting Hernandez's motion to suppress because he "spoke and clearly understood English throughout the video-recorded interview," and the investigator "did not have reason to believe that [Hernandez] did not understand English at the time of interview as he now claims." The parties dispute whether this interrogation was the product of a custodial interrogation, so we assume for purposes of this analysis that Hernandez was subject to a custodial interrogation, such

that Cano needed to comply with *Miranda* requirements.

**A.     Article 38.22**

Article 38.22 of the Texas Code of Criminal Procedure establishes procedural safeguards for securing the privilege against self-incrimination. *See id.* art. 38.22. It provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless (1) the statement was recorded and (2) prior to the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Id.* art. 38.22, § 3. The warning must inform a defendant of the following rights:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.

*Id.* art. 38.22, § 2; *see also United States v. Miranda*, 384 U.S. 436, 444 (1966). The statute contains two distinct elements pertaining to a statement's admissibility: the defendant's receipt of the prescribed warning and his waiver of the rights set out in the warning. Appellant does not assert that he was not warned of his rights. Instead, he states that he did not clearly understand the rights when he waived them and that he was coerced into making a confession.

The State has the burden of showing that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights and must prove waiver by a preponderance of the

6

evidence. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). "[A] waiver need not assume a particular form and, in some cases, a 'waiver can be clearly inferred from the actions and words of the person interrogated.'" *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)). To evaluate whether a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights, we turn to the standard outlined in *Joseph. See id.* at 25. The waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 21 (1986)). "Only if the totality of the circumstances surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* (internal quotations omitted). This approach requires consideration of all the circumstances surrounding interrogation as well as consideration of the defendant's experience, background, and conduct. *Id.*

**B.    Standard of Review**

In reviewing the trial court's ruling on a motion to suppress statements made as a result of custodial interrogation, we apply a bifurcated standard of review. *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We review the ruling considering the totality of the circumstances, giving almost total deference to the trial court on questions of historical fact, as well as its application of law to fact questions that turn on credibility and demeanor. *Pecina*, 361 S.W.3d at 79; *Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011). But we review de novo the trial court's rulings on questions of law and mixed

7

questions of law and fact that do not depend on credibility determinations. *Pecina*, 361 S.W.3d at 79; *Leza*, 351 S.W.3d at 349. We view the record in the light most favorable to the trial court's ruling and reverse the judgment only if it lies outside the zone of reasonable disagreement. *Hereford v. State*, 339 S.W.3d 111, 118 (Tex. Crim. App. 2011).

**C.    Discussion**

In this case, the warnings read to Hernandez made him fully aware of the rights set forth in *Miranda* and Article 38.22, as well as the consequences of abandoning those rights. *See Miranda*, 384 U.S. at 444; TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2. Although the trial court found that Hernandez had "a limited understanding of the English language," at the time of the interview, the record does not support this finding. *See Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (declining to give "almost total deference" to the trial court's findings where the videotape did not pivot "on an evaluation of credibility and demeanor"). Hernandez testified that he graduated from high school with "Bs" and was admitted to college (although he failed his course). Furthermore, the video unequivocally demonstrates that Hernandez comprehended all of Cano's interrogation questions and answered them in English coherently and appropriately. At no time did he ask for an interpreter or that the interview be stopped. *See Joseph*, 309 S.W.3d at 26. Aside from the form *Miranda* warnings, Cano explained to Hernandez: "You can say, you know what Investigator I don't want to talk [any]more . . . You don't have to. I can't force you to." When Cano asked Hernandez if the waiver portion was clear to him, Hernandez nodded his head affirmatively and proceeded to waive his rights. Immediately after being warned by Cano that he did not have to make a statement, Hernandez willingly

participated in an almost hour-long interview in English. Thus, there is nothing in the video indicating that Hernandez's educational background or mental capabilities prevented him from understanding Cano. *See Joseph*, 309 S.W.3d at 27; *see also Linton v. State*, 275 S.W.3d 493, 508 (Tex. Crim. App. 2009) ("[I]n keeping with the notion that the question on appeal is whether the defendant received due process rather than a perfect translation," "100% comprehension" is "not the constitutional requirement."). In fact, Hernandez elaborated several responses—curtailing the trial court's finding that he lacked an understanding of the language. Furthermore, Hernandez signed the acknowledgment form indicating that he understood them. *See Joseph*, 309 S.W.3d at 26; *see also Rojas v. State*, No. 12-03-00016-CR, 2004 WL 626178, at *2 (Tex. App.— Tyler Mar. 30, 2004, no pet.) (mem. op., not designated for publication) (holding the trial court did not err in denying the motion to suppress where law enforcement testified that appellant understood the English language and that he had no trouble communicating in English).

Additionally, the trial court's finding that Hernandez's confession was not "without promises, threats, or coercion" is not supported by the record. *See id.* Here, there is indisputable video evidence that there was no intimidation, coercion, physical or psychological pressure from Cano to elicit statements during the interview. *See Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) ("[W]hen evidence is conclusive, such as . . . 'indisputable visual evidence,' then any trial court findings inconsistent with that conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling"); *Leza*, 351 S.W.3d at 349 ("Before it may be said that a waiver of a *Miranda* right is involuntary, however, there

must be some element of official intimidation, coercion, or deception."); *Carmouche*, 10 S.W.3d at 332 (declining to defer to the trial court's finding because "the videotape presents indisputable visual evidence contradicting essential portions of [the subject] testimony"); *Oursbourn v. State*, 259 S.W.3d 159, 181 (Tex. Crim. App. 2008) ("Appellant did not raise any disputed factual issue under Article 38.23 concerning the legality of obtaining his statement because there was no evidence of the type of police coercion or overreaching envisioned by the Supreme Court."). Additionally, Hernandez seemed calm during the interview and did not show any signs of duress. *Cf.Oursbourn*, 259 S.W.3d at 170–71 (collecting cases involving police overreaching). Therefore, the evidence does not support the trial court's finding that Hernandez's confession was the product of threats, intimidation, or coercion. *See Joseph*, 309 S.W.3d at 26.

In sum, we conclude the evidence does not support the trial court's finding that Hernandez "lacked a legal understanding of the individual words and combination of the words in the *Miranda* Warning and waiver" or that he did not sign it without promises, threats, or coercion. *See id.*; *see also Alvarado-Gutierrez v. State*, No. 01-16-00756-CR, 2017 WL 4413948, at *7 (Tex. App.—Houston [1st Dist.] Oct. 5, 2017, pet. ref'd) (mem. op., not designated for publication). Accordingly, we conclude that the totality of the circumstances here does not support the trial court's determination.[2] We sustain the State's issue.

---

[2] At the motion to suppress, Hernandez had direct communication exchanges in English with the State, his counsel, and the trial court, which reflects Hernandez's ability to communicate effectively. *See Linton v. State*, 275 S.W.3d 493, 506 (Tex. Crim. App. 2009) (holding appellant not denied due process when direct exchanges with trial judge during hearing on motion to suppress reflected appellant's ability to communicate effectively).

## III.    CONCLUSION

We reverse the trial court's judgment, and we remand the case for further proceedings consistent with this memorandum opinion.

JAIME TIJERINA
Chief Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
14th day of August, 2025.