

# NUMBER 13-24-00620-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                    Appellant,

v.

STEPHEN GRAY,                                                          Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 1
## OF SAN PATRICIO COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Justices Silva, Peña, and Cron**
**Memorandum Opinion by Justice Silva**

Appellant the State of Texas appeals the trial court's order granting a motion to exclude and a motion to suppress in favor of appellee Stephen Gray. By a single issue, the State contends that the trial court erred in granting Gray's motions. We reverse and remand.

## I.   BACKGROUND

On November 3, 2021, Gray was charged by information with driving while intoxicated (DWI), a Class B Misdemeanor. *See* TEX. PENAL CODE § 49.04. Gray requested discovery from the prosecutor's office on November 12, 2021. The prosecutor's office subsequently provided Gray's counsel discovery, including a DWI case report that indicated Gray's interview was "asked on video." On May 31, 2022, Gray filed a formal request for compliance with Article 39.14 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. art. 39.14. On December 12, 2023, Gray's counsel emailed the prosecutor inquiring about the status of the video stating, "Do you have that video and does it exist?" A jury trial commenced the following day, and the trial court granted a mistrial without prejudice.[1]

On September 24, 2024, Gray filed a motion to suppress all illegally obtained evidence and statements resulting from Gray's October 4, 2021 arrest. On October 21, 2024, he filed an amended motion to suppress and a motion to exclude requesting that the trial court exclude "all evidence offered by the [prosecution], in any form[,] regarding the intoxilyzer room and anything that took place in that room." In his motion to exclude, Gray argued that his rights to discovery under Article 39.14 were violated. On October 28, 2024, the trial court heard evidence and arguments on Gray's motions.

### A.   Motion to Suppress and Motion to Exclude

Portland Police Department (PPD) Corporal Christopher Tysor testified that in December of 2023 he was contacted by the prosecutor in an "attempt to locate any

---

[1] The record before us does not contain the reporter's record of the December 2023 trial.

video . . . that would have been submitted" by PPD in relation to Gray's case. He further testified that although he was not assigned to the case, he confirmed that two body camera videos and one dash camera video from Gray's arrest were turned over to the prosecution. Corporal Tysor explained that part of his duties include making sure that all evidence is submitted in a particular case. He described the process when submitting a case to the prosecutor's office that includes signing a *Brady* compliance form. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). On cross-examination, Corporal Tysor was questioned regarding missing evidence. He responded, "I'm not aware of any evidence that was missing in this case." When pressed about a recording in the intoxilyzer room, Corporal Tysor testified, "I don't know if it was working or not that day" and "before we do an intoxilyzer operation of that instrument, we don't have electronic devices on in there, to include body cam[eras], because it can interfere with the results." He explained, "That's how we're trained when we go to intoxilyzer school."

PPD Detective David Cisneros testified that whenever the patrol officers make an arrest, the detectives "put the case in order" by collecting any videos and paperwork associated with the case and forwarding it to the proper agency. He admitted that there was a camera in the intoxilyzer room that works "on and off." Detective Cisneros agreed that PPD could not determine if that specific camera was working at the time of Gray's arrest, and he could not say whether it had audio or not. He further stated that dispatch had live access to the camera for safety purposes and PPD did not normally include that type of video footage in its case file "unless there was an incident, maybe a fight or anything of that nature." Detective Cisneros confirmed that PPD was aware that the camera worked sometimes and other times it did not. Regardless, he noted that PPD did

3

not rely on the camera in the intoxilyzer room, and he also confirmed that officers should have their body cameras turned on when making any contact with an individual or the public.

On re-direct examination, the following colloquy occurred:

| | |
|---|---|
| [Prosecutor]: | So either you or [Detective Joe] Tamez looked at this report, you got the body cam[era] and the dash cam[era]s— |
| THE COURT: | Okay, let's clarify. Who looked at the report? Was it this witness? Were you the one that oversaw the submitting of the evidence from this officer to the [prosecution]? |
| [Detective Cisneros]: | It was both of us, ma'am. |
| THE COURT: | Both of you. Okay. Thank you. |
| [Prosecutor]: | So was the video made of that room? |
| [Detective Cisneros]: | No, there was . . . no video. |
| [Prosecutor]: | In this report? |
| [Detective Cisneros]: | In the report. |
| [Prosecutor]: | Okay. So [P]PD didn't withhold any information, did they? |
| [Detective Cisneros]: | No ma'am. |
| [Prosecutor]: | Okay. And so if three videos were given in this report to the [prosecution], that's what was given to us, correct? |
| [Detective Cisneros]: | Correct, yes, ma'am. |
| [Prosecutor]: | Okay. Would you agree with me that if . . . the camera was working and if a video was made of this arrest, it no longer exists? |
| [Detective Cisneros]: | Correct, yes, ma'am. |

4

Former PPD Officer Amanda Butler testified that she was present on the night of Gray's arrest. When asked by the prosecutor whether the video at issue was recovered, she replied, "No." She also testified "I don't know" when asked if the video existed.

Former PPD Officer Joseph Riojas testified and the following exchange occurred:

[Prosecutor]: Okay. So . . . we talked about this DWI case report. The questions that are asked . . .[are] in booking, correct?

[Officer Riojas]: Right.

. . . .

[Prosecutor]: Okay. In this particular case, you did ask [Gray] these questions, correct?

[Officer Riojas]: Yes.

[Prosecutor]: But when you got to the jail, the booking area, whatever, did you keep your camera on?

[Officer Riojas]: No.

[Prosecutor]: Why was that?

[Officer Riojas]: I was told that . . . the electronics could interfere with the intoxilyzer, so I turned it off.

[Prosecutor]: Okay. And . . . do you remember where the questioning took place?

[Officer Riojas]: My field training officer was a 1081 certified instructor, or certified operator, so he would have had to be there in the intox[ilyzer] room . . . asking those questions. Or both of us, I should say.

[Prosecutor]: Okay. So it's your recollection that these questions were asked in the intoxilyzer room?

[Officer Riojas]: Right.

5

| | |
|---|---|
| [Prosecutor]: | Okay. But in your report—may I approach, Your Honor? |
| THE COURT: | You may. For the purposes of the record, what is it that you're showing [Officer Riojas]? |
| [Prosecutor]: | It's a DWI case report, page eight and nine of nine. |
| | And this box is filled in? |
| [Officer Riojas]: | Yes. |
| [Prosecutor]: | And what does this say? |
| [Officer Riojas]: | Interview asked on video. |
| [Prosecutor]: | Okay. You put that, right? |
| [Officer Riojas]: | Yes. |
| [Prosecutor]: | But your body cam[era] was off? |
| [Officer Riojas]: | Right. |
| [Prosecutor]: | So how do you know it was on video? |
| [Officer Riojas]: | Because the intox[ilyzer] room is supposed to have a . . . camera recording. |
| [Prosecutor]: | Okay. So you saw a camera there? |
| [Officer Riojas]: | Yes. |
| [Prosecutor]: | Is it fair to say you assumed it was recording? |
| [Officer Riojas]: | Yes. |
| . . . . | |
| [Prosecutor]: | Okay. And Officer Riojas, you also fill[ed] out a *Brady* compliance form, correct? |
| [Officer Riojas]: | Yes, ma'am. |

6

| [Prosecutor]: | And to the best of your knowledge, all videos were turned in to the [prosecution], correct? |
| --- | --- |
| [Officer Riojas]: | Yes. |
| [Prosecutor]: | And at that time, with your [DWI] report, you thought that camera had been turned over to the [prosecution]? |
| [Officer Riojas]: | Correct. |
| [Prosecutor]: | Do you know whether or not that video was turned over? |
| [Officer Riojas]: | I mean now I know that it wasn't. |

Prosecutor Angela Godoy also testified during the hearing. Godoy testified that discovery was emailed to Gray's counsel on November 12, 2021. She further testified that on December 12, 2023, Gray's counsel asked her whether an additional video existed. Godoy explained that when this occurred, she took action to locate the video. She stated that,

> [Gray's counsel] wants to say that I didn't inquire until February of this year. That's not the case. I had been inquiring. I knew what was going on, or I was told the camera may work, may not work, it's only held for [thirty] days, so yes, at this point it did not exist, and it never had audio, is what I was told.

The trial court noted on the record that "there was no bad faith or acts of gross negligence found on behalf of the [prosecution]." Notably, Gray's counsel appeared to concede that the testimony adduced at the hearing did not show that the intoxilyzer room was recorded: "Whether it was recorded, we cannot know." Following the hearing, the trial court granted Gray's motions, excluding all evidence and testimony related to his statements in the intoxilyzer room.

7

**B. Findings of Fact and Conclusions of Law**

On January 13, 2025, the trial court entered, in relevant part, the following findings

of fact and conclusions of law:

<u>Findings of Fact</u>

1.   [Gray] was arrested for the offenses of [DWI] and Unlawful Carrying of a Weapon on or about October 4, 2021.

2.   [Officer Riojas] conducted the interview with [Gray] in the [PPD's i]ntoxilyzer room.

3.   [PPD] had surveillance and recording equipment in the [i]ntoxilyzer room.

4.   [Officer Riojas] turned off his body cam[era], relying on the [i]ntoxilyzer room surveillance and recording equipment to record the interview.

      . . . .

6.   [Officer Riojas] nor any other officer from [PPD] downloaded and submitted the video of [Gray]'s interview to the [prosecution].

      . . . .

22.  [Officer Riojas] failed to download and maintain the video recording of [Gray]'s interview. [PPD] failed to ascertain the existence of the video interview and provide it to the [prosecution]. Failure to ascertain the existence of the video and failure to download the video interview resulted in its destruction.

      . . . .

<u>Conclusions of Law</u>

      . . . .

12.  Under the facts of this case, [PPD] failed to ascertain what evidence was in its possession and failed to download and maintain the video recording of [Gray]'s interview.

13.  Under the facts of this case, the [prosecution] had a DWI case report

8

submitted by [Officer Riojas] that detailed the interview with [Gray] was on video. The [prosecution] knew the videos in its possession did not contain an interview of [Gray]. The [prosecution] failed to ascertain from [PPD] anything about [Gray]'s interview recording, resulting in such evidence being destroyed. This failure constitutes a violation of the duty imposed by the plain language of [Article] 39.14(a) . . . [.]

14. Therefore, because [PPD] and the [prosecution] failed to comply with Article 39.14(a), the testimony and the evidence obtained during the interview with [Gray] is excluded from evidence.

Notably, the trial court made no finding that any portion of the officers' testimony was not credible. This appeal ensued.

## II.    STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's exclusion of evidence for an abuse of discretion. *State v. Heath*, 696 S.W.3d 677, 688 (Tex. Crim. App. 2024). "A trial court abuses its discretion if its decision lies outside of the zone of reasonable disagreement." *Id.* at 688–89. We may not substitute our own decision for that of the trial court. *Id.* at 689. We will not intercede with the trial court's decision as long as its evidentiary ruling is within the zone of reasonable disagreement. *Id.*

In reviewing a trial court's ruling on a motion to suppress evidence, we use a bifurcated standard of review. *Armstrong v. State*, 713 S.W.3d 893, 902 (Tex. Crim. App. 2025); *Wexler v. State*, 625 S.W.3d 162, 167 (Tex. Crim. App. 2021); *Pecina v. State*, 361 S.W.3d 68, 78–79 (Tex. Crim. App. 2012). "We afford almost total deference to the trial court's rulings on questions of historical fact and on application of law to fact questions that turn upon credibility and demeanor . . . ." *Pecina*, 361 S.W.3d at 79. A trial court's ruling should not be reversed unless it is arbitrary, unreasonable, or outside the zone of reasonable disagreement. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App.

2018). When a trial court makes express findings of fact, we "must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record." *Tilghman v. State*, 624 S.W.3d 801, 806 (Tex. Crim. App. 2021). "We, however, review *de novo* the trial court's rulings on pure questions of law or mixed questions of law and fact that do not hinge on credibility or demeanor." *Ochoa v. State*, 707 S.W.3d 344, 360 (Tex. Crim. App. 2024). We will affirm the trial court's ruling on a motion to suppress if it is supported by the record and "correct under any applicable theory of law." *Armstrong*, 713 S.W.3d at 902.

A criminal defendant has the constitutional right to due process. *See* U.S. CONST. amend. XIV; TEX. CONST. art. I, § 19. "According to the plain text of Article 39.14, criminal defendants now have a general statutory right to discovery in Texas beyond the guarantees of due process," requiring the State to "disclose all 'exculpatory, impeaching, and mitigating' evidence to the defense that tends to negate guilt or reduce punishment" and is within its "possession, custody, or control." *Watkins v. State*, 619 S.W.3d 265, 277, 291 (Tex. Crim. App. 2021) (citing TEX. CODE CRIM. PROC. art. 39.14(a)). "[T]he obligation to produce material evidence extends to evidence that is in the possession of law enforcement agencies." *Heath*, 696 S.W.3d at 708. To be clear, the evidence must be within the State's possession, custody, or control for purposes of an Article 39.14 compliance challenge. *See In re State ex rel. Skurka*, 512 S.W.3d 444, 455 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.); *see also Mitchell v. State*, No. 01-23-00251-CR, 2024 WL 187385, at *7 (Tex. App.—Houston [1st Dist.] Jan. 18, 2024, no pet.) (mem. op., not designated for publication) ("The defendant has the burden to show the complained-of evidence was in the State's possession but withheld."); *Mumphord v. State*, No. 13-22-

00388-CR, 2023 WL 6886119, at *8 (Tex. App.—Corpus Christi–Edinburg Oct. 19, 2023, pet. ref'd) (mem. op., not designated for publication) ("We will not impose a burden on the State to produce evidence which may not be available or might not even exist."); *Chandler v. State*, No. 02-18-00166-CR, 2018 WL 6565812, at *1 n.2 (Tex. App.—Fort Worth Dec. 13, 2018, pet. ref'd) (mem. op., not designated for publication) ("[T]he State's duty to turn over material evidence and exculpatory evidence does not extend to lost items but instead is limited to items in its possession, custody, or control.").

### III.   ANALYSIS

### A.   Existence of Video

The State argues in part that no evidence was presented establishing the camera in the intoxilyzer room even made a video recording on the night of Gray's arrest. We agree. Certain findings made by the trial court are simply not supported by the record. *See Tilghman*, 624 S.W.3d at 806.

The trial court found that neither "[Officer Riojas] nor any other officer from [PPD] downloaded and submitted the video of [Gray]'s interview to the [prosecution]." This finding is premised on the existence of a video recording of Gray's interview. However, testimony adduced at the hearing did not establish that such video existed. Instead, Corporal Tysor confirmed that two body cameras and one dash camera were provided to the prosecution concerning Gray's case. Further, testimony by Detective Cisneros confirmed that there was no video recording from the intoxilyzer room, and no portion of his testimony indicated that a video of Gray existed. He also testified that the camera in the intoxilyzer room worked sometimes, that PPD did not rely on the camera, and he was not sure if the audio worked or not. Additionally, Officer Butler testified that the purported

11

video was not recovered and she was unaware of its existence. Officer Riojas testified that in his DWI report he indicated that there was a video of Gray's interview because he noticed a camera in the intoxilyzer room and assumed it was functioning. Moreover, Gray's counsel seemingly conceded that there was no evidence that the video at issue existed by stating at the hearing, "Whether it was recorded, we cannot know." We conclude the trial court's finding was not supported by the record evidence adduced at the hearing. *See id.*

Next, the trial court found that the "[f]ailure to ascertain the existence of the video and failure to download the video interview resulted in its destruction." As already discussed supra, the evidence adduced at the hearing did not show that a video existed and, moreover, did not prove its destruction. Detective Cisneros's testimony merely established that the camera in the intoxilyzer room works "on and off" and if the video of Gray did exist, the recording would no longer be available. When the prosecutor asked, "Would you agree with me that if . . . the camera was working and if a video was made of this arrest, it no longer exists," he replied, "Correct, yes, ma'am." Considering the hypothetical nature of the prosecutor's question, we cannot conclude that Detective Cisneros's testimony constitutes evidence that a video actually existed and was destroyed. The trial court's finding concerning the video's destruction was not supported by the evidence at the hearing. *See id.*

Accordingly, the trial court's conclusions of law concerning the existence and destruction of a video containing Gray's interview are erroneous in light of the unsupported findings of fact as discussed above. Because the trial court's findings concerning the same are not supported by the record, we conclude that the trial court

erred when it suppressed the testimony and evidence obtained during Gray's interview. *See id.* We sustain the State's sole issue.

## IV. CONCLUSION

We reverse the trial court's judgment and remand the case to the trial court for further proceedings in accordance with this opinion.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
30th day of April, 2026.

13